## KEE VS. THE STATE.

CRIMINAL LAW: *When wound the mediate cause of death.*

Where A., with felonious intent inflicted a wound upon B., and within a year and a day death resulted, not from the wound *immediately*, but *mediately*, as from inflammation caused by the wound and occasioned by improper treatment on the part of the attendants: *Held*, That this may be murder in the first or second degree, or manslaughter, as the case may be.

EVIDENCE: *As to character, limitation of.*

The defendant, on trial for a crime, is entitled to offer in defense, evidence as to his good character, and the only limitation by which the rule should be circumscribed is, that in each case the character sought to be proved should not be general, but such as would make it unlikely that the defendant would be guilty of the particular crime with which he is charged.

NEW TRIAL: *What not sufficient ground for.*

The fact that the jury, during a trial, in company with the sheriff, visited a saloon and took a glass of liquor each, though highly reprehensible, will not, of itself, be sufficient ground for granting a new trial, unless it appears that the defendant was prejudiced thereby.

SAME: *What separation of jury not sufficient.*

Where the jury, while at dinner, were separated, part being in one room and part in another, but all remained under the immediate charge of an officer, this was not such separation as would authorize a new trial.

APPEAL from *Woodruff* Circuit Court.

Hon. W. C. HAZELDINE, Circuit Judge.

*Clark & Williams*, for appellant.

SEARLE, J.   The appellant was tried upon an indictment for the murder of one Langley, in the Woodruff circuit court, at the September term thereof, 1872.   The jury found him guilty of murder in the second degree, and he was sentenced to eleven years of hard labor in the state penitentiary.

In the progress of the trial divers exceptions were taken to the rulings of the court, upon evidence offered and upon instructions given to the jury as to the law of the case, all of which, after the verdict, were brought forward in a motion for a new trial. The motion for a new trial was overruled, to which appellant excepted, and filed his bill of exceptions, setting out all the evidence, the instructions given and refused by the court, and various other matters assigned as errors, and appealed to this court. The errors assigned as the foundation for a motion for a new trial are substantially as follows:

1. That the verdict of the jury was contrary to the law and the evidence.

2. That the court erroneously gave the instructions asked to be given by the state, and refused to give those asked by the appellant.

3. That the court neglected legal and material testimony offered by the appellant.

4. That the jury were permitted to go to a drinking saloon, and drank spirituous liquors during their deliberations.

5. That the jury were permitted to separate during the trial.

The correctness of the verdict of the jury, and also of the instructions of the court, by which the jury were directed to the verdict in the trial of the cause below, rests in a great measure, if not entirely, upon the testimony which was before the jury. It is necessary, therefore, to look first to the testimony.

The wound which was received by the deceased was inflicted by the appellant on the 27th day of July, 1872, and death ensued on the 2d day of September, 1872.

Miller, witness for the prosecution, testified as follows: He was acquainted with the deceased and the prisoner; was in Augusta on the 27th of July, 1872, and saw both Kee and

Kee vs. The State.

Langley, the evening of that day. He, with Langley and others, was in Gordon's store, when Kee, with one White, came in. Kee asked Langley to walk into the back room with him, whereupon deceased, Kee and White went into the back room. After some little time, he, witness, heard quarreling between the prisoner and deceased in the back room; heard the d — d lie given; did not know who gave it. He then went into the back room and saw the prisoner draw from his pocket an open pocket knife, with which he struck deceased. Deceased returning the blow, the prisoner struck him again. Before the prisoner struck the deceased, the latter stepped back two paces. After the prisoner struck deceased the second time, T. B. Gordon and John Hodges came in and separated the parties. The wound, which the prisoner inflicted upon the deceased, was upon his left side. Deceased told the prisoner that he was unwilling to fight, as he had been chilling for twelve months. Gordon and Hodges testified, substantially, the same as Miller. White testified as follows: He saw prisoner and deceased on the 27th of July, 1872, first in Price's drinking saloon; some words passed between them there; deceased was rough, and used insulting language toward the prisoner. He (witness) left the saloon with the prisoner. Some time after, with the prisoner, he went to Gordon's store. While there, the deceased came up and remarked to the prisoner, "I want to see you." Prisoner replied, "I don't want any fuss with you, and if I have insulted you, I am willing to make apologies." Prisoner, deceased and witness then went into the back room of Gordon's store. Prisoner said to deceased, "We are both drunk; let us go home, get sober and then meet on half-way ground and settle it." Deceased replied, "No, here is as good place as any to settle it." After some more quarreling, deceased called the prisoner a d — d liar, and struck him. Prisoner

then struck deceased.   He (witness) saw no knife in prisoner's
hand, but saw deceased pass his hand to his side and there
saw blood.

Dr. Echols testified as follows: He was a practicing phy-
sician in the town of Augusta.   On the 27th of July, 1872,
deceased was brought to his office for treatment.   On exami-
nation, he fouud that the deceased was wounded on the left
side, across the seventh and eighth ribs.   The wound was
about six inches long and half an inch deep, and perforated
the intercostal muscle in two places.   He did not consider the
wound mortal.   He, with the assistance of Dr. Brunson,
dressed the wound.   The patient remained in town two days,
and then, contrary to his advice, was removed to Maj. Dent's
plantation, about seven miles from Augusta, in a common
road wagon.   The deceased remained under his professional
charge from the time of the reception of the wound until his
death.   The wound commenced healing on first intention and
symptoms were favorable for the first fourteen days.   He or-
dered the wound to be kept covered with a cloth saturated
with a carbolic acid wash.   In his (witness') opinion, his in-
structions were not properly observed, as on or about the 14th
of August, on examination of the wound, he discovered mag-
gots in it; and, in his opinion, if his instructions had been
observed, it would have been impossible for maggots to have
got into the wound.   The presence of the maggots caused in-
flammation of the bowels, from or on account of which in-
flammation the patient died.   Dr. Brunson, who assisted in
dressing the wound, stated, that in his opinion the wound was
not necessarily fatal.

Maj. Dent, to whose house deceased was removed, testified
that the deceased was as well cared for as possible under the
circumstances, it being August, and the weather being very
hot.   Pope, an attendant upon the deceased, testified that he

followed the directions of the physician, Dr. Echols, to the best of his ability.

Upon this evidence, the appellant's counsel asked the following instructions:

" If the jury find that the wound inflicted by the defendant, on the deceased, was not of itself mortal, but through negligence or the want of proper treatment became so and terminated fatally, and that neglect or want of proper treatment was the immediate cause of the death of the deceased, and not the wound itself, they must acquit the defendant," which was refused and in lieu thereof the following instructions, asked by the state's counsel, were given:

" If the jury believe from the evidence that Langley within the space of a year and a day, from the infliction of the wound, died from some disease or disorder produced by said wound, inflicted by the voluntary act of the defendant, when not in danger of life or limb from Langley, then they will find the defendant guilty as charged.

" If the jury believe from the evidence that the defendant willfully and unlawfully inflicted upon Langley, a mortal or dangerous wound, and from that wound and other aggravating causes, operating upon or caused by said wound, Langley died, they should find the defendant guilty ; and the defendant cannot, under the law, shelter himself by a plea of erroneous treatment of said Langley, either from his physcians or his nurses ;" and to the refusal to give the first and to the giving of the last two instructions, the appellant excepted.

It is contended by the appellant's counsel, that the deceased came to his death by inflammation of the bowels ; that the death had no relation to the wound, " except that of sequence" (as to time, we presume they mean), and that the inflammation which caused the death was not the effect of the wound either, but of the maggots, and that the maggots were not the effect

of the wound, but of the negligence on the part of the nurses, in not obeying the instructions of the physicians. They insist, therefore, that the death had no connection with the wound as the effect thereof, mediately or immediately. They, consequently, argue that the verdict of the jury was without evidence to support it, as to the fact that the wound was the mediate or immediate cause of the death, which fact the jury must have found as the foundation of their verdict; and that the instructions of the court, upon the state of facts presented by the testimony, were erroneous and tended to misdirect the jury to their erroneous finding and verdict.

The following are, we think, the correct rules or doctrines in relation to the questions presented by the exceptions which we are considering. The evidence must connect the death with the blow charged. Wharton's American Criminal Law, 1064. "The general rule (to use the language of Mr. Bishop in his Treatise on Criminal Law), both of law and reason, is, that whenever a man contributes to a particular result, brought about, either by sole volition of another, or by such volition added to his own, he is to be held responsible for the result, the same as if his own unaided hand had produced it. The contribution, however, must be of such magnitude and so near the result that sustaining to it the relation of cause and effect, the law takes it within its cognizance. Now, these propositions conduct us to the doctrine, that whenever a blow is inflicted under circumstances to render the party inflicting it criminally responsible, if death follows, he will be holden for murder or manslaughter, though the person beaten would have died from other causes, or would not have died from this one, had not others operated with it; provided, that the blow really contributed mediately or immediately to the death as it actually took place in a degree sufficient for the law's notice." Bishop on Criminal Law, sec. 653. See, also,

2 Whart. Am. Crim. Law, sec. 941. This, we think, is the correct doctrine expressed in very general terms, as gathered from numerous cases cited by Mr. Bishop and Mr. Wharton.

It is said in *Rex v. Rew,* J. Kel., 26, " That Edward Rew was indicted for killing Nathaniel Rew, his brother, and upon the evidence, it was resolved, that if one gives wounds to another who neglects to cure them, or is disorderly, and doth not keep that rule which a person wounded should do, yet, if he die, it is murder or manslaughter according as the case is, * * because, if the wound had not been, the man had not died; and, therefore, neglect or disorder in the person who receives the wounds shall not excuse the person who gave them." And Lord Hale says : " If a man receives a wound which is not in itself mortal, but either for want of helpful appliances · or neglect thereof, it turns to a gangrene or fever, and the gangrene or fever be the immediate cause of his death, yet this is murder or manslaughter in him that gave the stroke or wound; for the wound, though it were not the immediate cause of his death, yet it were the mediate cause thereof, and the fever or gangrene were the immediate cause of his death, yet the wound was the cause of the gangrene or fever, and so, consequently, is *causa causati*. 1 Hale's Pl. C., 428. See, also, *Com .v. Hackett,* 2 Allen (Mass.), 136; *The State v. Scott,* 12 La. (An.), 274; and *McAllister v. The State,* 17 Ala., 439. In the latter case, DARGAN, C. J., speaking for the court, said : " If the death be owing truly to the wound, it signifies not that the deceased would have recovered under more favorable circumstances or with more prudent care ; the death being the result of the wound, the party inflicting it must be held responsible for it." But on the other hand it has been said, " If the wound or hurt be not mortal, but with ill appliances of the party or those about him, of unwholesome salve or medicines, the party dies, if it clearly appear that this medi-

cine, and not the wound, was the cause of his death, it seems it is not homicide (murder or manslaughter); but then that must appear clearly and certainly not to be so." 1 Hale's Pl. C., 428.   Likewise, by more recent authorities, that " when the wound was not of itself mortal, the party died solely of the improper treatment and not at all of the wound, the result is otherwise," that is, murder or manslaughter has not been committed.    3 Greenl. Ev., sec. 139; *Rey v. Connor*, 2 Cor. & K., 518 ; *Parsons v. The State*, 21 Ala., 300.

But Mr. Bishop says that this doctrine " is practically dangerous ; because, in law, if the person dies by the action of the wound, and by the medical or surgical action jointly, the wound must clearly be regarded sufficiently a cause of the death.    And the wound need not even be a concurrent cause, much less need it be the next proximate one ; for if it is the cause of the cause, no more is required." 2 Bish. Crim. Law, sec. 654 ; see also *Com. v. McPike*, 3 Cush. 181; *Rex v. Minnock*, 1 Crawf. and Dix C. C., 45.    The doctrine as enunciated and illustrated by the authorities above quoted and cited, has its foundation in a wise and sound policy, and to uphold the reverse of it, or any other, would be to establish a most dangerous precedent, and one which would work the acquittal of the offender in every case where the wound superinduced other disease of which the victim died.    In the case under consideration, so far as the wounding of the deceased, his treatment by removal from Augusta to Dent's plantation, and the nature of the wound are concerned, the evidence is not conflicting.    As to the treatment of the wound, the evidence is conflicting ; the physician testifying that his directions were not followed by the nurses, and the nurses testifying to the contrary.    But we apprehend that this has but little to do with the law of the case ; it was a matter which was exclusively within the province of the jury to consider and determine.

By a process of very refined reasoning, the appellant's counsel endeavored to show that there was no such relation between the death of the deceased and the wound by which it could be predicated that the former was in any sense the effect of the latter, or in other words, that the wound was the cause of the death, either immediately or mediately. We are free to confess, that we cannot see the force of this reasoning. Grant that the wound "was not necessarily fatal," as testified to by Dr. Brunson; grant also that the nurses were negligent in their care of the deceased, and that the maggots would not have appeared, had the physician's instructions been observed, still it cannot be doubted that the wound was the efficient cause of the maggots, and the negligence of the nurses was merely the occasion of their appearance. Nor can it be doubted that the wound itself, and the maggots thus caused and occasioned were conjointly the efficient causes of the inflammation which resulted in death. This then clearly comes within the doctrine laid down by Mr. Bishop and supported by Lord HALE, and nearly all the authorities, that the wound need not even be a concurrent cause, much less need it be the next proximate one; for if it be *causa causati*, no more is required to constitute the offense.

The fact then that the deceased was removed in a rough manner, and that the nurses failed or neglected to carry out the instructions of the physician (if this were true), and which may have aggravated the wound, ought not to mitigate the crime of the appellant, whose malice in the infliction of the wound caused the death. To do that, it must plainly appear that the death was caused neither immediately nor mediately by the wound, but only and entirely by the improper treatment from persons other than the appellant.

The position assumed by the counsel, namely, that the State adduced no testimony to show that in point of fact the

deceased died from the effect of the wound immediately or mediately, is untenable. The State proved that the appellant cut deceased, that inflammation resulted from the wound inflicted (occasioned by improper treatment, it may be, but this is unnatural), and from which deceased died. By the light of the above authorities and in view of the facts of the case, we are of opinion that the court did not err in relation to the above instructions. The jury were the .sole judges of the facts, and their verdict is in accordance with the weight of the evidence. The jury found that the deceased came to his death at the hands of the appellant, and that the killing was felonious. The verdict, therefore, was not inconsistent with the law and evidence, and so far as these exceptions are concerned, the court did not err in refusing to grant a new trial.

The third assignment of error in the motion for a new trial, will next be considered. The appellant, after the State had closed her evidence, offered testimony to prove that he had the reputation among his neighbors of a quiet and peaceable citizen. This testimony was refused and the appellant excepted.

That a person, upon trial for a crime charged against him, has a right to offer, in his defense, testimony of his good character, we can have no doubt. This is and ought to be the general rule; with one limitation, however, as laid down by the authorities, namely, that "in such case the character sought to be proved must not be general, but such as would make it unlikely that the defendant would be guilty of the particular crime with which he is charged." Whart. Am. Crim. Law, sec. 636; 1 Bish. Crim. Pra., sec. 489; 1 Greenl., sec. 55.

With this limitation, such testimony should be allowed to go to the jury in every case, whether it be regarded by the court as a plain or a doubtful one, and be considered by them

in connection with all the other facts and circumstances; and if the case happen to be a plain one, and from the facts of the crime charged they believe the accused to be guilty, they must so find, notwithstanding his good character. 1 Greenl. Ev., sec. 55; 3 id., sec. 25; 1 Bish. Crim. Pr., sec. 489; 1 Whart. Am. Crim. Law, 636; *State v. Henry*, 5 Jones, 67; *Carroll v. State*, 3 Humph., 315.

It is urged by the counsel for the state, that, notwithstanding the general rule, this exclusion of evidence was not error in this case, because the proof of the cutting was conclusive, and proof of appellant's good character ought not to be let in to controvert such proof. It is true, that if this testimony had been let in, it could have had no weight in controverting the fact of the cutting, even had it been favorable to the appellant; and were this the object of this testimony, we might well conclude that the exclusion of it resulted in no prejudice to the appellant. But this was not the object of it. It was evidently intended, by this testimony, to rebut the presumption of malice on the part of the appellant. It was certainly admissible for this purpose. The prisoner and the deceased had been quarreling about half an hour before the wound was given; they had been quarreling near and at the time the wound was given, and the wound was inflicted with a pocket knife. Such testimony was, therefore, very properly admissible to show a want of malice, at least to show a want of malice sufficient for murder. It should have been admitted, but with such instructions on the part of the court as to the character of such evidence as would guard the jury from being misled by it or giving it too much weight.

The exclusion of this testimony was, therefore, a gross error.

The fourth reason for the motion for a new trial is, that the jury were permitted to go into a drinking saloon and drink spirituous liquors during their deliberations. This is sup-

ported by affidavits, from which it appears that the jury visited a drinking saloon during their deliberations in the case, where they, or most of them, took a drink of spirituous liquor, the sheriff being with them and paying for the drinks. It does not appear that in consequence of this, the prisoner did not receive a "fair and impartial trial," and therefore it furnishes no valid reason for a new trial. This conduct, nevertheless, was very reprehensible on the part of the jurymen guilty of it, and especially on the part of the sheriff; and they should have been severely punished by the court.

The fifth reason for a motion for a new trial is, that the jury were permitted to separate during the trial. This, also, is supported by affidavits, from which it appears that on several occasions when the jury were taking refreshments at the hotel, two of them, being colored men, were accommodated apart and in a different room from the others; but they were all under the charge of an officer. This was in no respect such a separation as provided against by the law, and no prejudice could be presumed to have resulted to the appellant thereby.

For the single error we have pointed out, which relates to the exclusion of evidence of good character, we must reverse the judgment of the court below, and the cause must be remanded for another trial.