# Bone *v.* The State.

## *Manslaughter.*

(Decided May 15, 1913. 62 South. 455.)

1. *Jury; Venire; Service; Order.*—Under Acts 1909, p. 319, an order directing that a list of the jurors summoned for the week during which the defendant's trial is set be served on defendant is a sufficient compliance with the statute and not subject to objection.

2. *Same; Motion to Quash.*—A mistake in the name of a juror as it appears either in the venire or in the list served on defendant, is not ground for quashing the venire.

3. *Same; Misnomer; Challenge by State.*—Although the name of a juror was incorrectly placed upon venire served on defendant, any objection or error caused thereby, was removed when the state challenged such juror.

4. *Same; Competency.*—Where a juror was excused for cause, and the examination of such juror was not set out, the court may presume on appeal that a ground for challenge was developed by such examination.

5. *Appeal and Error; Inviting Error; Right to Complain.*—Where a juror was eliminated from the list on the objection of defendant, the defendant cannot complain of such elimination.

6. *Evidence; Admissions; Res Gestae.*—The fact that after defendant came out of the building where the homicide occurred, he stated to a witness that if the witness said anything he would kill him, is admissible as an admission, and as of the res gestae.

7. *Homicide; Evidence; Previous Difficulty.*—In a prosecution for homicide, evidence that a person present took defendant away from the scene of a former difficulty with deceased about two hours before the killing, was not objectionable, but defendant is not entitled on cross-examination to prove the details of such former difficulty.

8. *Same; Circumstances Surrounding Act.*—Where a witness testified as to the demeanor of defendant when he came to deceased's place of business just prior to the shooting, stating the facts, it was not proper to ask him if there was anything threatening in defendant's manner, or if he made any demonstration, as he had already testified as to the manner, and if there was a demonstration, the facts concerning same should have been shown.

9. *Same; Habits of Accused.*—Where it was shown that defendant had been drinking at the time he killed deceased, it was competent to show his disposition when drinking.

10. *Same; Self-Defense; Bodily Harm.*—A charge that the law gives a person the same right to protect himself from great bodily harm, as from death, and that he may use necessary force to protect himself from any felonious assault, was a proper statement and should have been given.

11. *Same.*—Where a charge details circumstances justifying defendant in killing in self-defense, and then concludes with the statement that the burden is on the state to show that defendant was not free from fault, it was open to the construction that the burden was on the state whether or not the defendant had discharged the burden upon him to show other facts justifying the taking of life in self-defense.

12. *Same.*—A charge asserting that if defendant procured a gun for the purpose of returning it to its owner, and then returned to the place of business of deceased in a peaceful manner doing nothing to renew a former difficulty, he was not thereby deprived of his right of self-defense, is properly refused as giving undue prominence to evidence, and as being argumentative.

13. *Same; Apparent Necessity.*—A charge asserting that it was not necessary that defendant should be in actual danger, or that retreating would really have increased his peril, but that he had a right to act upon reasonable appearances, is substantially correct, though not entirely clear.

14. *Witnesses; Competency.*—A child seven years of age who stated that God made him, and that if he did right when he died he

[Bone v. The State.]

would be saved, and that if he were to tell an untruth he would go to the bad man, showed an intelligent comprehension of the wrong of falsehood, and a sufficient belief in the state of future rewards and punishments to render him competent to testify.

15. *Same; Age.*—The law recognizes no particular age at which a child may in all cases be legally competent or incompetent.

16. *Same; Recalling; Discretion.*—The court will not be put in error for refusing to permit answers to questions asked a witness who was recalled by defendant for cross-examination, as it was within the discretion of the court to refuse or permit further cross-examination.

17. *Trial; Objections to Evidence; Grounds.*—A motion to exclude evidence should show the grounds for the motion, and also an objection to the question propounded.

18. *Charge of Court; Invading Province of Jury.*—Requested charges which are invasive of the province of the jury are properly refused.

19. *Same; Referring Law Questions to Jury.*—A charge asserting that if the jury have a reasonable doubt as to whether defendant acted in self-defense, after considering all the evidence, they should acquit, is properly refused as referring a question of law to the jury.

20. *Same; Argumentative.*—Charges which are argumentative, although they state correct legal propositions, may be refused without error.

21. *Same; Covered by Those Given.*—It is not error to refuse charges substantially covered by requested charges given.

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Willis Bone was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

The witness Harbin, after testifying to the particulars of the difficulty, was asked what the defendant said after he came out of the door after the shooting, and the witness replied: "He said that if we said anything he would kill me."

The following charges were refused to defendant:

"(1) If you believe from the evidence that the defendant went into Walker's place on a peaceful mission, then the mere fact that he did go into such place would not deprive defendant of the right of self defense.

"(2) Prior communicated threats made by deceased against defendant would arm defendant with the right to take more prompt and decisive measures to protect himself from a threatened assault made by deceased upon defendant.

"(3) Prior communicated threats made by deceased against defendant have a tendency to make defendant take more prompt and decisive measures to protect himself.

"(4) The mere fact that defendant went into Walker's blind tiger would not deprive him of the right to set up self-defense.

"(5) The law gives a person the same right to use such force as may be reasonably necessary, under the circumstances by which he is surrounded, to protect himself from great bodily harm, as it does to prevent his life from being taken. He may excusably use this necessary force to save himself from any felonious assault.

"(6.) If, after the jury have considered all the evidence in this case, you have a reasonable doubt as to whether the defendant acted in self-defense, you should acquit him.

"(7). If you believe from the evidence in this case that defendant went into Joe Walker's blind tiger to get whisky, and not for the purpose of provoking the difficulty with Walker, then the fact that he went into such place would not deprive him of the right to set up self-defense.

"(8) If, at the time the fatal shot was fired, the defendant was in danger, real or apparent, of suffering grievous bodily harm from an assault being made upon him by the deceased, and there was no reasonable mode of escape open to him, he would be justified in firing to protect his own life from such grievous bodily harm, if

he was free from fault in bringing on the difficulty; and the burden is upon the state to show that the defendant was not free from fault.

"(9) If the jury believe that Bone went to his house and procured a gun, and in so doing was not actuated by any motive of preparing himself to commence or enter upon a difficulty, but solely for the purpose of returning the gun to Otto Self, the owner of said gun, and that Bone returned to the place of business conducted by deceased in a peaceful manner, and that after he returned he did nothing to renew the former difficulty, or to bring on or provoke the difficulty with Walker, then the mere fact that he had gone home, armed himself, and returned would not deprive him of the right of self-defense.

"(10) The court charges the jury that the law gives a citizen the right to take prompt and decisive steps to defend himself against a felonious assault made against him, if by such assault he is placed in a position of peril of losing his life or of suffering grievous bodily harm, and there is no reasonable mode of escape without increasing his peril, and he is free from fault in bringing on the difficulty, and if the person making the assault had made threats against such person which have been communicated, and is a person reputed to be quarrelsome, dangerous and bloodthirsty, then the one assaulted would have the right to take more prompt and decisive steps to defend himself from such assault." The authorities cited in appellant's brief as to charge 10 are: *Perry v. State,* 94 Ala. 20, 10 South. 650, and *Roberts v. State,* 68 Ala. 156.

"(11) The court charges the jury that if a man has been threatened by another, and he honestly believes that there are reasonable grounds for him to believe that the person threatening him intends to take his life

or inflict upon him great bodily harm, then such person would have the right to arm himself for self-protection, to defend himself against any felonious assault made upon him by such person so threatening him; and I further charge you that a person whose life has been threatened does not have to abandon his business and secrete himself, but he had the right under the circumstances hypothesized to arm himself for self-defense and go where his business called him, even though it may be that the person who threatens his life is at that particular place.

Charges 12 and 13 are practically the same as 11.

"(14) It is not necessary under the evidence in this case that defendant should have been actually in danger of death or great bodily harm at the time he killed the deceased, or that retreating would really increase his peril, in order for him to have been justified in shooting the deceased. He had the right to act on the appearance of same, taken in the light of any threats that the evidence proved the deceased to have made against the defendant."

J. B. Brown, A. A. Griffith, and F. E. St. John, for appellant. The court erred in refusing to quash the venire, first, because it contained the wrong names of jurors, and 2nd, because, the order of the court did not comply with the statute.—Acts 1909, p. 319; *Lea v. State,* 172 Ala. 382; *Harris v. State,* 172 Ala. 413; *Carwile v. State,* 148 Ala. 576; *Brown v. State,* 128 Ala. 16. The court committed reversible error in allowing the state to exercise the right of challenge, either for cause or preemptorily, otherwise than by striking names from the list, since the Acts of 1909, p. 305, expressly repeals Article 7 of Chapter 242 of the Code.—*Gilmore v. State,* 126 Ala. 33; *Spivey v. State,* 172 Ala. 391. It is incom-

[Bone v. The State.]

petent to show that the defendant was carried away from a previous difficulty about two hours before the fatal encounter.—*Bluett v. State,* 151 Ala. 41; *Jones v. State,* 116 Ala. 468. The court erred in permitting Lonnie Walker to testify, as he was not shown to be of sufficient age and intelligence.—*State v. Morea,* 2 Ala. 277; *Jones v. State,* 145 Ala. 52, and cases cited. A witness may testify as to the appearance and demeanor of a person.—*Taggert v. State,* 143 Ala. 88. It is not competent to show the disposition of defendant while drinking.—*Way v. State,* 155 Ala. 63; *Andrews v. State,* 159 Ala. 14. Charge 2 requested by defendant should have been given.—*Perry v. State,* 94 Ala. 30; *Roberts v. State,* 68 Ala. 156. Charge 5 should have been given.— *Black v. State,* 59 South. 692; *Twitty v. State,* 168 Ala. 59; *Kennedy v. State,* 140 Ala. 1. Charge 8 should have been given.—*Gibson v. State,* 89 Ala. 121. Charge 9 should have been given, as should charge 10.—*Perry v. State, supra; Roberts v. State, supra; Montgomery v. State,* 160 Ala. 7. Counsel discuss other charges, but without further citation of authority.

R. C. BRICKELL, Attorney General, and W. L. MARTIN, Assistant Attorney General, for the State.

PELHAM, J.—The orders of the court setting the case for trial and providing for copies of the indictment and jury lists to be served on the defendant are in all particulars as required by statute.—Acts 1909, p. 319. The defendant's objection that the language used in the order requiring the list of the regular jurors drawn and summoned for "the week during which the defendant's trial is set" to be served on the defendant, not being a compliance with the statute providing that those jurors specially drawn to-

gether with "the regular jurors drawn and summoned for the week set for the trial" shall constitute the venire from which the jury to try the defendant shall be selected, is hypercritical. The wording used in the order is practically the exact language of the statute, which provides that the court must enter an order causing a list of the names of all jurors summoned "for the week in which the trial is set," etc., to be served on the defendant.—Acts 1909, p. 319. The record affirmatively shows that the proper lists were served on the defendant in obedience to the order of the court.

The defendant's motion to quash the venire because there was a mistake in the name of the juror Whatley, as it apepared on the list served on the defendant, is not sufficient on which to base a motion to quash the venire. —Acts 1909, § 32, p. 320; *Longmire v. State,* 130 Ala. 66, 30 South. 413.

The defendant's objection to having the juror Whatley put upon him because his name was not on the list of jurors served upon him was removed, for it appears that this juror was challenged by the state for cause before the parties were required to strike the jury from the list furnished for that purpose in the trial of the case. No prejudice resulted to the defendant from having the name of this juror on the list prepared from which the jury was to be selected by striking, although his name was not on the list served upon the defendant, for his name was stricken from the list before the parties were required to strike.—*White v. State, Infra.,* 62 South. 454.

The examination of the juror on his voir dire is not set out, and the court may presume in support of the correctness of the ruling of the trial court, in the absence of anything to the contrary, that a ground for challenge for cause developed on the examination.

The exception to striking the juror and eliminating his name from the list on the objection of the defendant can avail the defendant nothing as a predicate for reversible error. A party cannot thus blow hot and cold by inviting an action and then objecting to it.

The declaration made by the defendant as he left the deceased's place of business immediately after the shooting was admissible, and the court properly admitted it. It was a declaration in the nature of an admission, and also part of the res gestæ.

There was no prejudicial error of which the defendant can complain in the court's permitting the state to prove by the witness Turner that he carried the defendant away with him from the scene of a former difficulty between the defendant and the deceased some two hours before the fatal rencounter.

The defendant's offering to show on cross-examination by the state's witness Turner that in a former difficulty between the parties the deceased drew a pistol on the defendant was nothing more than an attempt to prove the details of a former difficulty, and the testimony was not permissible for that reason. Besides, the witness subsequently, upon being recalled, testified to this fact without objection.

The child Lonnie Walker, on his voir dire examination, testified that "God made him, that if he were to tell something that was not so he would go to the bad man, that if he did right, when he died, he would be saved," and his testimony as set out shows considerable capacity for understanding in one of seven years of age. There is no particular age recognized in this state at which a witness of tender years may, in all cases, be pronounced legally competent or incompetent to testify. A child of seven years of age has been held to be competent to testify as a witness in a case where on her ex-

amination voir dire she shows an intelligent compre-
hension of the belief that a falsehood is morally wrong
and that furture punishment will follow as a conse-
quence.—*McGuff v. State,* 88 Ala. 147, 7 South. 35, 16
Am. St. Rep. 25. We think the voir dire examination
of the witness Lonnie Walker disclosed an intelligent
comprehension of the belief in the wrong of falsehood
and a sufficient belief in the future state of reward and
punishment to make him competent to testify, and that
the court did not err in receiving his testimony.—
*Grimes v. State,* 105 Ala. 86, 17 South. 184; *Williams v.
State,* 109 Ala. 64, 19 South. 530.

The defendant's witness Ballard was allowed to state
that when the defendant came into the deceased's place
of business, where the fatal difficulty almost immediate-
ly took place, the defendant seemed to be "as pleasing as
I ever saw him," that he did not appear mad, and that
he spoke in a friendly manner and made no effort to
raise the shotgun that he carried down by his side until
"grabbed" by a third party, one Harbin; and the court
cannot be put in error for refusing to allow the defend-
ant to go further and ask the witness if there was any-
thing threatening in the defendant's manner when he
came in, and if he made any demonstration. Whether
or not the defendant made any demonstration was sus-
ceptible of proof by the facts going to show a demon-
stration, and these facts could have been elicited by
proper questions calling for them, and the witness had
already been allowed to testify to matters covering the
question as to there being anything threatening in de-
fendant's manner when he entered the place.

No grounds were stated for the motion to exclude the
statement of the witness Turner, "When he is drinking
he is pretty wild," and this testimony may have been
given in response to a question calling directly for it, to

which no objection was interposed. An objection to the question propounded should be shown.—*Ala. Con. C. & I. Co. v. Heald,* 171 Ala. 263, 55 South. 181. The defendant was shown to have been drinking at the time he killed the deceased, and his disposition when drinking was relevant.

The court cannot be put in error for refusing to allow the defendant to cross-examine the witness Turner in regard to the witness Murphy's relations with the deceased, even if the questions were competent, and we do not think they were, for the questions to which objections were sustained were asked the witness Turner upon his having been recalled by the defendant for the purpose of further cross-examination, after he had been examined in chief and on cross, and it was in the discretion of the court to permit or refuse further cross-examination.

The numerous other rulings on the evidence to which exceptions are shown to have been reserved are not insisted upon or discussed in argument or brief of counsel for defendant, and we find nothing in them meriting discussion.

Requested charges 1, 2, 3, 4, and 7, refused to the defendant, are argumentative or invade the province of the jury as referred to the facts set out in the bill of exceptions.

It is the duty of trial courts to conform their rulings to the holdings of the Supreme Court and of this court. The refusal of the court to give charge No. 5 requested by the defendant shows (we will asume) an unintentional, but nevertheless flagrant, violation of this rule governing the action of trial courts. This court, on June 4, 1912, rendered an opinion in the case of *Black v. State,* 5 Ala. App. 87, 59 South. 692, appealed from the same circuit and tried before the same judge that

presided in the instant case, and in the *Black Case,* this court, following the recent holding of the Supreme Court in *Twitty v. State,* 168 Ala. 59, 53 South. 308, held that a charge in the identical language of charge 5 in this case was a charge that should have been given. This case, tried by the same judge that presided in the *Black Case,* was tried on September 20, 1912, only a little more than three months after the opinion in the *Black Case.* The charge is as applicable to the facts in the instant case as to the facts in either the *Twitty* or *Black Cases.* The Supreme Court has approved the charge as one that should be given, and this court, as is its duty, has conformed its rulings to those of the Supreme Court, and the trial court must be reversed for having failed to do so.

Charge 6 refers a question of law to the jury, and was properly refused.

Charge 8 is misleading as worded and punctuated, in that it might be construed by the jury as meaning in all events and under all circumstances the burden of proof is on the state to show that the defendant was not free from fault in bringing on the difficulty, whether or not the defendant had discharged the onus resting upon him of showing the other facts which justify the taking of life to preserve life.—*Cleveland v. State,* 86 Ala. 1, 5 South. 426; *Lewis v. State,* 88 Ala. 11, 6 South. 755; *Holmes v. State,* 100 Ala. 80, 14 South. 864. The correct propositions in this charge are substantially covered by the given charges.

Charge 9 gives undue prominence to a portion of the testimony and is argumentative.

The authorities cited by appellant in support of charge No. 10 bear out the appellant's contention as to the propositions therein contained having been held to

be correct statements of the law, but they seem to be substantially covered by the given charges.

Charges 11 and 13 are manifestly argumentative, and we think charge 12 open to the same objection or criticism.

Charge 14 is the same charge as referred to in the *Black Case, supra,* as substantially the same charge that was approved in *Bluitt v. State,* 161 Ala. 14, 49 South. 854, and *Bluett v. State,* 151 Ala. 51, 44 South. 84. The charge as approved by the Supreme Court as it appears in *Bluitt's Case* reads: "He had the right to act on the appearance of things at the time, taken in the light of all the evidence," etc., and as set out in the record in this case and as it appears in *Black's Case* it reads, in that connection: "He had the right to act on the appearance of same," and as thus written the charge is not entirely clear, and possibly might be condemned as calculated to confuse, but it seems to us to be substantially the same charge as approved by the Supreme Court in *Bluitt's Case.*

Reversed and remanded.