# Bullington v. The State.

## Murder.

(Decided June 15, 1915.    69 South. 319.)

1. *Witnesses; Examination; Cross.*—Where a witness had testified that defendant was arranging to go to town when he left, it was proper to sustain objection to a question on cross-examination seeking to elicit testimony that defendant had made arrangement to go to town on the day of the homicide.

2. *Evidence; Expert.*—A person who had heard the sound of a gun was competent to describe the report made by the gun at the time deceased was shot, since such a sound is not the subject of expert testimony alone.

3. *Witnesses; Bias; Materiality.*—Evidence that the father of the witness signed a bail bond for deceased some time before he was killed, did not tend to show bias on the part of the witness who was the head of an independent household, and is otherwise immaterial.

4. *Same.*—Evidence that a witness and deceased were friendly was admissible to show bias on the part of the witness; bias and friendly relations of witness to either of the parties never being collateral facts.

5. *Appeal and Error; Harmless Error; Evidence.*—Excluding evidence of friendly relations between a witness and deceased was

[Bullington v. The State.]

harmless under rule 45, Supreme Court Practice, unless it appears that the error complained of has probably injuriously affected the substantial rights of the parties.

6. *Evidence; Intention or Motive.*—A witness cannot be permitted to testify to his undisclosed motive or intention.

7. *Homicide; Evidence.*—Testimony that deceased stated that he had lost a year's work on account of defendant, and some morning they would get up and see a big pile of ashes, embodied no threat of violence to the person of defendant, and was properly excluded.

8. *Witnesses; Examination; Cross.*—Where a witness had testified that he knew the general character of defendant, and that it was good, he might properly be asked upon cross-examination if he had not heard of defendant's shooting a man a short time before the killing.

9. *Homicide; Evidence; Character of Deceased.*—Where there was evidence that deceased, after commanding the defendant to throw down his gun, made a hostile demonstration as if drawing a weapon, proof of the general character of deceased as a violent, bloodthirsty and dangerous man, was admissible as tending to justify prompt and decisive means of self-defense.

10. *Same.*—Notwithstanding the general character of deceased was shown to be violent and bloodthirsty, defendant was properly denied permission to prove declarations of deceased that he had killed two men.

11. *Same.*—The rule that the character of deceased may be shown on the question of self-defense does not extend to a character which is merely quarrelsome; hence, it was proper to sustain objection to a question as to whether the reputation of deceased was that of a peaceable, law-abiding man or that of a quarrelsome, dangerous man.

12. *Same; Instruction.*—A charge asserting that it was not necessary that defendant should have been actually in danger of death or great bodily harm when he killed deceased, or that retreating would really have increased his peril, in order for him to have been justified in shooting deceased, but that he had the right to act on the appearance of "same" taken in the light of any threats that the evidence showed deceased had made against defendant, was properly refused because of the use of the term "same" where the word "things" should have been used.

13. *Same.*—A charge asserting that in considering the evidence of defendant. while you may look to the fact that he is the defendant, yet that must not render him less creditable than he would be if he were not the defendant, is not only argumentative, but was invasive of the province of the jury.

14. *Charge of Court; Degree of Proof.*—A charge which requires the state to prove the guilt of defendant fully, clearly, satisfactorily, and to a moral certainty, requires a too high degree of proof, and its refusal was proper.

15. *Homicide; Instruction.*—An instruction that if the jury were unable after considering all the evidence to determine beyond a reasonable doubt, and to a moral certainty how the killing occurred,.

[Bullington v. The State.]

they should acquit, requires an acquittal on a false issue, and is properly refused.

16. *Same.*—Charges asserting that evidence of the character of deceased as a quarrelsome or dangerous man, is always admissible to illustrate the circumstances of the killing, since a demonstration or overt act or attack by such a man may afford much stronger evidence of imminent peril to the life or limb of the person assailed than when made by a person of opposite character, or disposition, is argumentative and properly refused.

17. *Same.*—An instruction that an act performed by a troublesome, fussy and dangerous man may afford much stronger evidence that the life of a person assailed was in imminent peril than if performed by one possessing a different character, and might justify a resort to more prompt means of self-preservation, was properly refused.

18. *Charge of Court; Covered by Those Given.*—An instruction identical with the written instruction given may be refused without error.

19. *Same; Emphasizing Evidence.*—Where several witnesses had testified to facts showing defendant's guilt, a charge that if the guilt of defendant depended on the evidence of a named witness, his testimony might be entirely disregarded if he had sworn falsely to a material matter, was properly refused as emphasizing the testimony of a single witness, and as ignoring other evidence.

20. *Same; Ignoring Evidence.*—An instruction which ignores important parts of the evidence is properly refused.

21. *Same; Misleading.*—A charge asserting that if a man has been threatened by another, and he honestly believes deceased intended to take his life, failed to require that deceased should have threatened him, and was properly refused as misleading.

APPEAL from Franklin Circuit Court.

Heard before Hon. C. P. ALMON.

William Bullington was convicted of manslaughter, and he appeals. Affirmed.

The following charges were refused to the defendant:

"(21) In considering the evidence of the defendant, while you may look to the fact that he is the defendant, yet that must not render him less creditable than he would be if he were not the defendant."

"(25) The state is bound to prove the guilt of the defendant fully, clearly, satisfactorily, and to a moral certainty before you will be authorized to find the defendant guilty."

"(31) If you are unable from all the evidence to determine beyond a reasonable doubt and to a moral

[Bullington v. The State.]

certainty how the killing occurred, you ought to find the defendant not guilty."

"(47) Evidence of the character of the deceased as a quarrelsome or dangerous man is always admissible for the purpose of illustrating the circumstances of the killing, since a demonstration or overt act or attack made by such a man may afford much stronger evidence of imminent peril to the life or limb of the person assailed when made by a person of opposite character or disposition."

"(49) An act performed by a troublesome, fussy, and dangerous man may afford much stronger evidence that the life of the person assailed was in imminent peril than if performed by one known to possess an entirely different character and disposition, and might very reasonably justify a resort to a more prompt means. of self-preservation."

"(66) If the guilt of the defendant depends on the evidence of the state's witness Bozeman, and if you find that he has sworn falsely in a material matter testified to, then you may disregard his testimony entirely, and in which event you should return a verdict of not guilty."

"(BB) If a man has been threatened by another, and he honestly believes, and there are reasonable grounds for him to believe, that the deceased intended to take his life, or to inflict upon him great bodily harm, then such person would have the right to arm himself for self-protection, provided his purpose was merely to defend himself from an assault, or an attack from such person so threatening him. Under such circumstances, a person thus threatened would have a right to go to places where the party who thus threatened his life then was, if such going was upon or for the purpose of at-

[Bullington v. The State.]

tending to business. In other words, a person does not have to abandon his business, and secrete himself."

No counsel marked for appellant.

W. L. MARTIN, Attorney General, and J. P. MUDD, Assistant Attorney General, for the State.

BROWN, J.—The appellant was indicted for murder in the first degree for killing Walter Berry, was tried and convicted of manslaughter in the first degree, and sentenced to the penitentiary for a year and a day as a punishment for the offense, and appeals.

The killing occurred in the public road in front of the defendant's mill, and the evidence offered by the state tended to show that, while Berry was traveling along the road passing by the mill, the defendant, who was watching, in ambush with others, shot him to death without provocation, while that on the part of the defendant tended to show that the deceased, while passing along the road by the defendant's mill, discovered the defendant with a gun, and, using a vile epithet, called upon defendant to drop his gun, and at the same time acted as though he was drawing a pistol from concealment on his person, and the defendant shot him. The evidence showed that the deceased in fact was not armed, and indicates that the cause of the tragedy originated in a disagreement between the defendant and the deceased over the division of a crop while the deceased was a tenant on the defendant's farm, resulting in enmity between them, and as a result of this enmity the deceased had threatened the defendant's life and been guilty of menacing conduct toward him, and through a spirit of fear or of retaliation the defendant waited his opportunity and killed the deceased while he was passing by the mill unarmed.

5—13

(1) The court did not err in sustaining the objection of the solicitor to the question asked the state's witness John Smith on cross-examination, eliciting testimony to the effect that defendant had made arrangements to go to Littleville that day. The witness had just testified that he was with the defendant just before the shot was fired that killed the deceased, and that he, witness, knew that defendant was arranging to go to Littleville when he, witness, left the defendant.

(2) The witness Dennis Smith testified that he heard the report of the gun fired by the defendant at the deceased immediately after defendant left him and went under the ginhouse, and that the sound from the gun was "a kind of dead sound." The witness also testified that he had heard shotguns often, and had heard lots of gunshots, and was competent to answer the question, "When a gun is shot in the open air, what kind of a sound does it make?" All persons are more or less familiar with the character of sound that results from firing a gun, and no peculiar skill or experience is required to qualify a witness to testify to such fact. One who has heard such sounds may describe them.—*L. & N. R. R. Co. v. Sandlin,* 125 Ala. 585, 28 South. 40; Underhill, Cr. Ev. § 334; *Williams v. State,* 147 Ala. 10, 41 South. 992.

The witness William Walter Berry was shown on the voir dire examination to be competent to testify as a witness, and his testimony was properly admitted.— *Bone v. State,* 8 Ala. App. 59, 62 South. 455.

(3) The fact that the father of the witness Alonzo Bozeman signed a bail bond for the deceased some time before he was killed was wholly immaterial to the issues in the case. It does not appear that the witness was a member of the father's family, or otherwise under his domination, but tends to show that the witness was him-

self the head of a household. Therefore the friendly relation of the father with the deceased would not show bias on the part of the witness.—*McAlpine v. State*, 117 Ala. 94, 23 South. 130.

(4) The fact that the witness and the deceased were friendly was material and admissible as a circumstance to show bias on the part of the witness, and the objection of the solicitor to the question, "Were not you and Berry, the deceased, very friendly" should have been overruled. The feeling, bias, and friendly relations of the witness toward either of the parties are never collateral facts.—Underhill on Cr. Ev. § 222; *Cook v. State*, 152 Ala. 66, 44 South. 549.

(5) However, in view of the great mass of evidence offered by the defendant impeaching the testimony of this witness and discrediting it, we are not of opinion that this ruling of the court injuriously affected the substantial rights of the defendant, and this error is not sufficient to work a reversal of the judgment of conviction.—Rule 45 (175 Ala. xxi, 61 South. ix).

(6) The court ruled correctly in sustaining the solicitor's objection to the question asked the witness Davis Burlington, "What did you go over there for this morning?" A witness cannot testify to his undisclosed motives or intentions.—*Fuller v. Whitlock*, 99 Ala. 411, 13 South. 80.

(7) The court did not err in excluding the testimony of John Cox, to the effect that the deceased stated to witness, "that he, deceased, had lost a year's work on account of Bullington, and some morning they would get up and see a big pile of ashes." This evidence did not embody a threat of violence to the defendant's person, and afforded no justification for the killing, and could shed no light on it.

(8) The witness Kirkland had testified for the defendant that he knew the general character of the defendant in the community for peace and quiet, and that it was good. It was permissible for the solicitor on cross-examination to ask him if he had not heard of defendant's shooting at a man in the community a short time before the killing of deceased.—*Hussey v. State,* 87 Ala. 121, 6 South. 420.

In connection with the defendant's testimony that the deceased, after commanding the defendant to throw down his gun, made an overt hostile demonstration as if he was drawing a weapon, proof of the general character of the deceased as a violent, bloodthirsty, dangerous man was admissible as defensive matter, as tending to justify more prompt and decisive means of self-defense, but this doctrine cannot safely be extended to embrace mere quarrelsome and fighting characters, nor to allow proof of specific acts or declarations of the deceased.—*Rhea v. State,* 100 Ala. 119, 14 South. 853; *Lang v. State,* 84 Ala. 1, 4 South. 193, 5 Am. St. Rep. 324; *Smith v. State,* 88 Ala. 73, 7 South. 52; *Davenport v. State,* 85 Ala. 336, 5 South. 152; *Roberts v. State,* 68 Ala. 156; *Perry v. State,* 94 Ala. 25, 10 South. 650; Underhill, Cr. Ev. §§ 324, 325.

(10, 11) These rules justify the action of the court in refusing to allow the defendant to prove the declaration of the deceased that he had killed two men, and in sustaining the objection of the solicitor to the question asked the witness Ben Martin, "Was his reputation that of a peaceable, law-abiding man, or that of a quarrelsome, dangerous man?"

(12) Charge 4 is identically the same as charge 14, criticised in the case of *Bone v. State,* 8 Ala. App. 59, 62 South. 455, for using the word "same" where the word "things" should have been used, and we are now

of the opinion that this defect justified the refusal of charge 4. The same principles of law which this charge undertook to assert were clearly given to the jury in given charges 38, 43, and D.

(13) Charge 21 was invasive of the province of the jury, and was argumentative.

(14) Charge 25 required too high a degree of proof, and was properly refused.

(15) Refused charge 31 is patently unsound, in that it required an acquittal on a false issue.

(16) Refused charge 42 in substance is identical with given charge 35, and was well refused, and is otherwise faulty.

(17, 18) Charges 47 and 49 were well refused.—*Rhea v. State, supra.*

The principle asserted in charge 62, refused to defendant, was covered by charge 61 given at his instance.

(19) Several witnesses testified in the case in behalf of the state to facts tending to show defendant's guilt; therefore charge 66 was properly refused as emphasizing and pointing out the evidence of a single witness and ignoring the other evidence in the case.—*Hubbard v. State,* 10 Ala. App. 47, 64 South. 633.

(20, 21) Charge BM is elliptical, and was for this reason properly refused. This charge also possesses tendencies calculated to mislead, in that it asserts "that if a man has been threatened by another and he believed the deceased intended to take his life," although the deceased had not threatened him.

When the general charge is construed as a whole, it correctly states the law, and is free from error.—*Winter v. State,* 132 Ala. 32, 31 South. 717.

No brief came to us for the appellant, but we have carefully examined all questions presented, and find no reversible error in the record.

Affirmed.