# Mitchell v. The State.

### Murder.

(Decided January 20, 1916.  70 South. 991.)

1. **Jury; Venire; Quashing.**—The mistake in the name of a juror summoned is not ground for quashing the venire (§ 32, Acts 1909, p. 320).

2. **Evidence; Character; Defendant.**—The evidence of the general good character of defendant is admissible to exculpate from the crime charged, but such evidence should be directed to the particular trait involved in the nature of the crime charged.

3. **Same.**—Where defendant puts his character in issue by offering proof of good character, the state may offer evidence of his general bad character in the respect in which it has been made an issue, or may, on cross examination of defendant's witness, show reports or rumors current in the community before the act under investigation, derogatory to his good character in the respect in which he has put it in issue, to show that such witness was mistaken in his estimate of defendant's good character.

[Mitchell v. The State.]

4. **Same.**—State's evidence, in rebuttal of evidence of the good character of defendant must be limited to repute affecting defendant's character prior in point of time to the commission of the alleged offense under investigation, and it is error to permit an inquiry as to what a witness had heard since the crime, although the particular act inquired about was reported to have occurred before.

5. **Witnesses; Impeachment; Defendant.**—The state may attack the character of defendant for the purpose of impeaching his testimony, where defendant voluntarily testified, but the impeaching evidence should be limited to that purpose when requested by defendant.

6. **Homicide; Evidence; Admissibility.**—A question calling for the undisclosed motive or purpose of a witness in going to her brother's house, was properly denied.

7. **Trial; Repetition of Testimony.**—The court may properly sustain an objection to a question calling for a repetition of testimony.

8. **Evidence; Opinion; Issue.**—Testimony as to what deceased appeared to be doing at the time he was shot related to the very matter in issue and was properly excluded.

9. **Homicide; Evidence.**—Where there was evidence that deceased was a peddler in the community where he was killed, and that on the day he was killed he was out collecting, a page of his account book showing the entry of an item against defendant's wife, was properly admitted as tending to show the motive of deceased in going to the house of defendant.

10. **Same; Justification.**—Where deceased was shot in the back as he was leaving defendant's house, although he provoked the original difficulty, yet if he had withdrawn from it in good faith, and was making an effort to get away, defendant in renewing the conflict put himself at fault, and could not invoke the doctrine of self defense.

11. **Same.**—Where deceased was shot in the back as he was leaving defendant's house, charges as to defense of defendant's wife as a justification which ignored such evidence of the shooting, were properly refused.

12. **Same.**—Charges recognizing defendant's right to shoot deceased if defendant's wife was in apparent peril, were properly refused, where they pretermitted an honest belief entertained by defendant that his wife was in such peril.

13. **Same; Defense of Family.**—Such charges were properly refused also as ignoring the doctrine that such peril to the wife must have existed at the time the shot was fired.

APPEAL from Bibb Circuit Court.

Heard before Hon. B. M. MILLER.

John Mitchell was convicted of killing Columbus Gentry, and appeals. Reversed and remanded.

The juror, as appearing from the list served on defendant, was E. Ben Perry, but the person answering gave his name as Ben Edmond Perry, and the court required defendant to strike from the list containing the name of E. Ben Perry. Defendant introduced

evidence tending to show that his reputation for peace and quiet-
ness in the community in which he lived prior to the shooting
was good. On cross-examination the solicitor asked the witnesses
if they had ever heard of Mitchell chasing Ben Klotsman away
from his place because he was trying to collect a little debt be-
fore this killing occurred. The witness answered, "No, sir; I did
not hear it before." Defendant moved to exclude that part of
the answer of witness, "I did not hear it before." The solicitor
also asked the further question: "Did you not hear after this
killing that before the killing he had chased Sam Letcher off
his place?" Defendant objected to the question, and the court
overruled objection and permitting the witness to answer. The
other exceptions sufficiently appear.

The following charges were refused to defendant: (4) "The
court charges the jury that under the undisputed evidence in
this case John Mitchell was free from fault in bringing on the
difficulty which resulted in Mr. Gentry's death, if any such diffi-
culty occurred."

(6) "The court charges the jury that if you believe from the
evidence the defendant shot to protect his wife, it is not neces-
sary under the evidence in this case that defendant's wife should
have been in actual danger of death or great bodily harm at the
time deceased was killed; the defendant had the right to act on
the appearance of same. If the circumstances attending the kill-
ing were such as to justify a reasonable belief that defendant's
wife was in danger of great bodily harm or death, and he hon-
estly believed such to be the case, then he had a right to shoot
deceased in defense of his wife, although, as a matter of fact,
his wife was not in actual danger, and if the jury believe from
the evidence that defendant acted under such conditions and
circumstances above set out, the jury should acquit him."

(7) "If the jury believe from the evidence that neither de-
fendant nor his wife were at fault in bringing on the difficulty
with deceased, but that deceased threatened to kill defendant's
wife, and at the same time placed his hand about his person in
such a way and manner as to indicate to a reasonable mind that
his purpose was to draw a weapon and assail defendant's wife,
or defendant, and in a threatening manner said he would cut
defendant's wife's throat, and jumped at defendant's wife, and
pursued her, then defendant was authorized to anticipate the

deceased and shoot him, having the right to act upon the reasonable appearance of things."

Defendant was convicted of manslaughter in the first degree, and sentenced to eight years in the penitentiary.

J. T. ELLISON, and FRANK H. DOMINICK, for appellant. W. L. MARTIN, Attorney General, and J. F. THOMPSON, Solicitor, for the State.

BROWN, J.— (1) The mistake in the name of the juror Perry as it appeared on the copy of the venire served on the defendant and on the list from which he was required to strike in selecting the jury furnished no ground for quashing the venire. —Acts 1909 (Special Session) § 32, p. 320; *Bone v. State,* 8 Ala. App. 66, 62 South. 455; *Smith v. State,* 165 Ala. 56, 51 South. 611.

(2) In criminal prosecutions, evidence of the general good character of the accused is admissible as original evidence tending to exculpate from the charge, and the weight of authority establishes what we consider the better rule, that such evidence, when offered, should be directed to the particular traits of character involved in the nature of the charge.—Underhill, Criminal Evidence, §§ 77-84; *Cauley v. State,* 92 Ala. 71, 9 South. 456; *Baulkum v. State,* 115 Ala. 118, 22 South. 532, 67 Am. St. Rep. 19; *Snead v. State,* 142 Ala. 14, 39 South. 329; *Commonwealth v. Nagle,* 157 Mass. 554, 32 N. E. 861; *Gandolfo v. State,* 11 Ohio St. 114; *Coffee v. State,* 1 Tex. App. 548; *Kee v. State,* 28 Ark. 155; *Westbrooks v. State,* 76 Miss. 710, 25 South. 491; *State v. Kennedy,* 177 Mo. 98, 75 S. W. 979; *Arnold v. State,* 131 Ga. 494, 62 S. E. 806.

(3) The character of the accused in this respect can be made an issue only by the accused offering proof of his good character, and when he does, the state may offer countervailing evidence of his general bad character in the respect in which it has been made an issue (*Smith v. State, supra*), or may, on the cross-examination of the defendant's witness, show reports or rumors current in the community of defendant's residence before the alleged criminal act under investigation derogatory to his good character in the respect he has put it in issue, for the purpose of showing that the witness was mistaken in his estimate of de-

[Mitchell v. The State.]

fendant's character.—*Bullington v. State,* 13 Ala. App. 61, 69 South. 319; *Ragland v. State,* 178 Ala. 59, 59 South. 637.

(4) But the evidence must be limited to repute affecting the defendant's character current prior to the commission of the crime under investigation.—*Ragland v. State, supra; Griffith v. State,* 90 Ala. 583, 8 South. 812.

"It is only just that this evidence should be free from any imputation or suggestion of wrongdoing which may have arisen from a public discussion of the crime or of the arrest of the accused. To permit the inquiry to extend down to the arrest or trial would be to embarrass, if not destroy, the probability of innocence arising from good character by evidence of a single wicked transaction, which the accused may not have committed at all. * * * Thus, for example, the state is not entitled to bring out on cross-examination of a witness, called to prove the good character of the accused, that, after the commission of the crime, he had heard that the accused had been guilty of actions and conduct that would indicate that the witness was mistaken in his estimate of good character."—Underhill, Criminal Evidence, § 83, p. 150; *White v. Commonwealth,* 80 Ky. 480; *Powers v. State,* 117 Tenn. 363, 97 S. W. 815.

Repute concerning specific acts affecting the character of one accused of crime after its commission too often emanate from sources of prejudice, interest, and bias growing out of the alleged criminal act, and to allow testimony affected with such infirmities would offer too much incentive for the circulation by interested parties and their friends of false reports, for the purpose of destroying the general reputation of the accused and depriving him of the benefit of a good character.

The result is, the learned trial court erred in overruling the defendant's objections to the questions of the solicitor on cross-examination of the defendant's character witnesses eliciting testimony as to what they had heard since the alleged crime, although the particular act inquired about was reported to have occurred before.—*Ragland v. State, supra; Forman v. State,* 190 Ala. 22, 67 South. 583.

(5) What we have said above applies only to character evidence admissible as exculpatory evidence. If the accused testifies as a witness, the credibility of his testimony may be impeached, like any other witness, by showing his general bad

[Mitchell v. The State.]

character; but in cases where the character of the accused in both respects is made an issue, to avoid impinging the principles above stated, the impeaching evidence, when requested by the accused, should be limited by the court to the purpose of impeaching the cridibility of the witness.—*McGuire v. State,* 2 Ala. App. 219, 57 South. 57; *Byers v. State,* 105 Ala. 31, 16 South. 716; *Fields v. State,* 121 Ala. 16, 25 South. 726; *Sweatt v. State,* 156 Ala. 85, 47 South. 194.

(6) The objection to the question to the witness Nina Mitchell, calling for her undisclosed motive or purpose in going to her brother's house, was properly sustained.—*Bullington v. State, supra.*

(7) The witness Kendrick testified on his examination in chief that the knife found by the defendant's daughter, Grace, "had not been moved; it had been rained on; the rain had beaten on it and dried on it." The question to which objection was sustained called for a repetition of this testimony, and objection was properly sustained.

(8) It is not permissible for a witness to usurp the functions of the jury by stating conclusions as to the very matters in issue. What the deceased was doing at the time he was shot was for the jury, and the court properly excluded the statement of the witness Mrs. Kendrick as to what deceased appeared to be doing.—*Brandon v. Progress Distilling Co.,* 167 Ala. 368, 52 South. 640.

(9) There was evidence tending to show that the deceased was a peddler in the community where he was killed, and that on the day of the homicide he was out collecting. The page of his account book containing an entry of an item against "Mrs. John Mitchell" was properly admitted as evidence tending to show the motive of deceased in going to the house of the defendant.

(10, 11) The evidence offered by the state tended to show that the deceased was shot in the back as he was leaving the defendant's house. If this was true, although it be true that he provoked the original difficulty, if he had withdrawn from it in good faith and was making an effort to get away, the defendant, when he renewed the conflict, put himself at fault, and cannot invoke the doctrine of self-defense.—*Jackson v. State,* 2 Ala. App. 59, 56 South. 96. Charges 4, 6, and 7 ignore this phase

of the evidence, and the principles of law applicable, and were properly refused.

(12) Charge 7 is faulty in another respect. It asserts the doctrine of apparent peril as to defendant's wife, and pretermits an honest belief entertained by the defendant that his wife was in such peril.—*Williams' Case,* 161 Ala. 52, 50 South. 59.

(13) Charge 6 is condemned for the further reason that it ignores the doctrine that the peril, real or apparent, must exist at the moment the shot is fired. If peril previously existed, but has passed, the necessity that excuses passes with it.

We have examined all other matters presented on the record and find no errors, other than the one above indicated, and for this the judgment is reversed.

Reversed and remanded.