# Wilson *v.* The State.

|140|43|
|144|41|

*Indictment for Murder.*

1. *Homicide; evidence as to threats; objection to form of question.*—While the usual form of asking a witness, on a trial under an indictment for murder, "did you hear the defendant make any threats against the deceased," may be objectionable as calling for a conclusion, no injury results where·the witness answered the question by ᵣₑₚᵉₐting a declaretion made by the defendant which is a threat against the deceased.

2. *Same; when threats of deceased against defendant admissible.* Unless it is proposed to show that such threats were communicated to the defendant, or that there is a question in the case as to whether the deceased was the aggressor or made hostile demonstrations tending to produce a belief on the part of the defendant at the time of the homicide that he was in peril of life or of grievous bodily harm, threats made by the deceased against the defendant are inadmissible.

3. *Same; statements by deceased after being shot inadmissible.*—On a trial under an indictment for murder, statements ·made by deceased, after the fatal shooting, in reference to how he was shot, are inadmissible in evidence when no predicate is laid for their introduction as a dying declaration.

4. *Admissibility of dying declarations; when corpus delicti sufficiently shown.*—On a trial under an indictment for murder, after evidence has been introduced going to show that the deceased died from a gunshot wound inflicted on him by the defendant, the *corpus delicti* is thereby sufficiently proved to authorize the introduction of dying declarations.

5. *Witness; admissibility of secondary evidence.*—Where a witness who had testified on the preliminary trial of the defendant, is shown to reside in a different State and to be a traveling man, and the sheriff testifies that he has searched the county for him, that he had been away from the county for more than twelve months, there is a sufficient predicate laid for the introduction of secondary evidence of the testimony given by said witness on the preliminary trial.

6. *Charge of court as to murder.*—On a trial under an indictment for murder, a charge which instructs the jury that in such case "no mere words used by the deceased towards the defendant, however abusing or insulting, will reduce the degree of

[Wilson v. The State.]

homicide to less than murder," asserts a correct proposition of law, and is properly given at the instance of the State.

7. *Homicide; charge as to self-defense.*—On a trial under an indictment for murder, where the defendant sets up self-defense, a charge in reference to said defense which pretermits inquiry as to defendant's fault in bringing on the difficulty, is erroneous and properly refused.

8. *Homicide; self-defense; imminent peril.*—On a trial under an indictment for murder, in order for the defendant to be justified in the killing on the theory of self-defense, it is necessary not only that he should have honestly believed that he was in imminent peril, but it is also necessary that the circumstances should be such as to reasonably impress him with that belief; and a charge as to self-defense which does not hypothesize that the circumstances were such as to reasonably impress him with such belief, is erroneous and properly refused.

9. *Homicide; charge as to reasonable doubt.*—On a trial under an indictment for murder, a charge is properly refused as tending to confuse the jury, which instructs them that "If any one of the jurors has a reasonable doubt, arising from the evidence in the case, of the guilt of the defendant as charged in the indictment in this case, the jury can not convict the defendant."

10. *Same; same.*—In the trial of a criminal case, a charge is erroneous and properly refused which instructs the jury that "the only foundation for a verdict of guilty in this case is that the entire jury shall believe from the evidence beyond a reasonable doubt and to a moral certainty that the defendant is guilty as charged in the indictment to the exclusion of any probability of his innocence and every reasonable doubt of his guilt, and if the prosecution has failed to furnish such measure of proof and to so impress the minds of the jury of the defendant's guilt, they must find the defendant not guilty."

11. *Homicide; charge as to formed design.*—On a trial under an indictment for murder, a charge is erroneous and properly refused which instructs the jury that "they cannot presume a formed design by the defendant to take life of the deceased from the use of a deadly weapon."

12. *Argumentative and confusing* charges are properly refused.

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. N. D. DENSON.

The appellant in this case, Walter Wilson, was indicted for the murder of John Webb, was convicted of murder in the second degree and sentenced to the penitentiary for twenty-five years.

There was evidence introduced showing that the deceased, John Webb, was killed by being shot with a pistol, by the defendant.

W. M. Parrish, a witness for the State, testified that he was near the place of the killing and saw Webb immediately after he was shot; that he was about 100 yards away; that he was attracted by two shots. This witness further testified that he witnessed a difficulty between the defendant and the deceased on the same day, a short time before the deceased was shot by the defendant. Whereupon the solicitor asked him the following question: "Did you hear Wilson make any threats against the deceased before he was shot?" The defendant objected to this question, on the ground that it called for the opinion of the witness. The court objected to this question and the defendant excepted. The witness answered that a short time before the shooting, he heard the defendant say to the deceased, "damn him, I will get him yet." This witness further testified that after the difficulty, which occurred a short time before the shooting, Wilson asked him to ask Webb if he could have a friendly talk with him; that the witness did this, and upon Webb consenting, he so told the defendant, and that thereupon the defendant went across the street to where Webb was and the shooting occurred within a few minutes. This witness, on cross-examination, was asked the following question: "On the same day and immediately preceding the shooting, did you not hear Webb make threats against Wilson?" The State objected to this question, the court sustained the objection, and the defendant duly excepted. There were then other witnesses introduced by the State, who testified to having seen the defendant shoot the deceased.

Charles Carter was introduced as a witness for the State and testified that at the time of the shooting he was at the county jail in Prattville; that after the shooting Wilson came by the jail and had a pistol in his hand and was twirling it about his fingers, and that he said, "I got him," or "I shot him;" and that after Wilson had told him about shooting Webb, he, the witness, went to where Webb was and carried him to a doctor.

The defendant then asked the witness this question: "Did Webb make any statements about the difficulty as you were going with him?" The solicitor objected to this question, the court sustained the objection, and the defendant duly excepted.

The next witness introduced by the State was Mr. Webb, the father of the deceased, who testified that after Webb was shot he was brought to an infirmary in Montgomery where he was operated upon and that he died in Montgomery. Upon this witness being asked if the deceased said anything about living or dying, the defendant objected to the question, upon the ground that the *corpus delicti* had not been proved. The court overruled this objection, and the defendant duly excepted. The witness then testified that the deceased, after being brought to Montgomery, said that he could not get well, and that he realized that he had to die, and that he did die within a few hours after making such statement; that after stating that he expected to die, the deceased said that the defendant shot him; that defendant sent to him and asked to have a friendly talk with him; that he, the deceased, first declined to talk with the defendant, but afterwards consented; that when the defendant came up he said to him to go away and let him alone; that he was then unarmed and that the defendant shot him.

The witness, Webb, further testified that he knew one O. H. Franklin and had received several letters from him, in which he stated that he was going to Tennessee and that he expected to come to the trial of the defendant; that Franklin's home was in Kansas City, Missouri; and that he was a travelling man. The State then introduced G. A. McWilliams, who testified that he was sheriff of Autauga county; that a subpœna had been issued for said O. H. Franklin as a witness in this case; that after the delivery of said subpœna to said witness he had searched Autauga county for said Franklin, but was unable to find him; that he inquired of every one whom he could about Franklin; that he knew he had left Autauga county and had been gone for twelve months; that he had not seen him since the last term of

the court.   The State then introduced one Chapman,
who testified that he knew Franklin, and that he was
present at the preliminary .trial, but that he had· not
seen him since July, 1902; that at the preliminary·trial
the witness Chapman wrote down the testimony that
was given by said O. H. Franklin, and identified the
testimony which he had so written, and thereupon the
State offered to introduce in evidence the written testi-
mony of O. H. Franklin which was given upon the pre-
liminary trial, and which was identified by the witness
Chapman.   The defendant objected to the introduction
of this evidence, upon the ground that the proper predi-
cate had not been shown to render it admissible.   The
court overruled the objection, and the defendant duly
excepted.

One Hooks was introduced as a witness for the State,
who testified that on the day the defendant shot Webb,
and before the shooting, he was with the defendant, and
the witness Parrish, and heard the conversation be-
tween them.   Thereupon the solicitor for the State
asked the witness the following question:   "Did you
hear Wilson make any threats at that time against
Webb?"   The defendant objected to this question, on
the ground that it called for a conclusion.   The court
overruled the objection, and the defendant excepted.
The witness answered that he heard Parrish advise
Wilson to go away and have no more trouble, and Wil-
son said, "That's all right; damn him, I will get him."

The evidence for the defendant tended to show that
after the deceased had consented to have a friendly talk
with the defendant, the defendant went to where he was,
and that the deceased said to him that he did not care to
talk to him, and that the deceased then caught hold of
the defendant in a rough manner and cursed him, ap-
plying to him a most opprobrious epithet; that he then
shook his fist in his face, and turning him loose stepped
back and threw his hands behind him towards his pistol
pocket, and that when he did this, the defendant fired
upon him.

There were several witnesses introduced for the de-
fendant, who testified that they knew the defendant's

character in the neighborhood where he lived for peace and quiet, and that it was good.

The court at the request of the defendant, instructed the jury that "If the killing was without passion, suddenly aroused by the actions of the deceased, and not done with malice, they cannot find the defendant guilty of murder in either degree." After giving this charge at the defendant's request, the court, at the request of the solicitor, gave to the jury the following written charge: "The court charges the jury that in a case of homicide no mere words used by the deceased towards the defendant, however abusing or insulting, will reduce the degree of homicide to less than murder."

The defendant duly excepted to the giving of this charge, at the request of the solicitor, and also separately excepted to the court's refusal to give each of the following written charges requested by him:

(2.) "The court charges the jury that if the killing was the result of action on the part of Webb, which aroused the defendant to sudden action or a reasonable apprehension of great bodily harm, or if they have a reasonable doubt from all the evidence as to whether the killing was the result of passion suddenly aroused by action on the part of the deceased, they can not find the defendant guilty of murder in either the first or second degree." (4.) "The court charges the jury that if they find from the evidence that immediately before the defendant fired the shot that caused the death of Webb, Webb acted in such a manner as to create in the mind of Wilson an honest belief that the defendant was in danger of his life or great bodily harm at the hands of Webb, and further find from the evidence that Wilson was free from fault in bringing on the difficulty which resulted in the death of Webb, and there was no reasonable way of escape, on the part of Wilson, they must find the defendant not guilty, notwithstanding that Webb was in fact unarmed at the time he was shot." (7.) "The court charges the jury that, if from the evidence they believe that the deceased was a quick, impulsive man, his, the deceased's, acts, would afford much stronger evidence that the life of the defendant

[Wilson v. The State.]

was in peril, than the same acts performed by one possessing an entirely different disposition, and justified a resort to more prompt measure of self-preservation; and if the deceased had threatened the life of the defendant, and said threat was known to the defendant, and by some act or demonstration at the time of the killing, taken in connection with such character and threats, the deceased induced a reasonable belief in the mind of the defendant that it was necessary to deprive the deceased of life in order to save his own, the defendant's life—and the defendant was free from fault in bringing on the difficulty, and had no reasonable way of escaping, they must find the defendant not guilty." (9.) "The court charges the jury that the presumption is, that the defendant is innocent, even after indictment found and read to him, and this presumption goes with him through the trial, until by proof that the State has produced from the stand evidence that convinces you—the jury—beyond all reasonable doubt that the defendant is guilty as charged in the indictment." (11.) "The court charges the jury that if any one of the jurors has a reasonable doubt, arising from the evidence in the case, of the guilt of the defendant as charged in the indictment in this case, the jury can not convict the defendant." (12.) "The court charges the jury that the only foundation for a verdict of guilty in this case is that the entire jury shall believe from the evidence beyond a reasonable doubt, and to a moral certainty, that the defendant is guilty as charged in the indictment to the exclusion of any probability of his innocence and every reasonable doubt of his guilt, and if the prosecution has failed to furnish such measure of proof, and to so impress the minds of the jury of the defendant's guilt, they must find the defendant not guilty." (18.) "The court charges the jury that they can not presume a formed design, by the defendant, to take the life of the deceased, from the use of a deadly weapon." (19.) "That if the circumstances surrounding the defendant at the time he shot the deceased were such as to impress the mind of a reasonable man so sit-

uated that his peril· would be increased by retreating, then the law did not require the defendant to retreat."

W. A. COLLIER, for appellant.

MASSEY WILSON, Attorney-General, for the State. The question asked the witness Parrish by the solicitor, to which the defendant objected, was nót subject to the objection interposed. The question called for the statement of a collective fact to which a witness may testify. *Linnehan v. State*, 116 Ala. 480; *Jones v. State*, 76 Ala. 8.

The fact. that deceased made threats against defendant, was inadmissible here, under the rule laid down in *Gafford v. State*, 122 Ala. 54.

The testimony of the absent witness Franklin was properly admitted.—*Jacobi v. State*, 133 Ala. 1.

The charge given for the State was correct.—*Compton v. State*, 110 Ala. 24.

The court properly refused to give the several charges requested by the defendant.—*Sanders v. State*, 134 Ala. 74; *Miller v. State*, 107 Ala. 40; *Compton v. State*, 110 Ala. 24.

McCLELLAN, C. J.—The usual form of the inquiry on the subject is to ask the witness whether he heard the defendant make any threats against the deceased.   If this form of question is objectionable as calling for a conclusion, no harm results where the witness, as did Hooks and Parrish in this case, answers by repeating a declaration made by the defendant which is a threat against the deceased.

Threats by the deceased against the defendant are inadmissible unless it is proposed to show that they were communicated to the defendant, or that there is a question in the case as to whether the deceased was the aggressor or made hostile demonstrations tending to produce a belief on the part of the defendant at the time of the fatal act that he was in peril of life or limb or grievous bodily harm.   Nothing of this sort was in the case

nor proposed when it was sought to prove threats of the deceased by the witness Parrish, and the action of the court in sustaining an objection to the question in that behalf was free from error.

No predicate as for a dying declaration was laid for the proposed evidence as to what deceased said about the shooting, nor was such statement shown to be of the *res gestae* of the occurrence. The court, therefore, properly excluded the evidence of such statements sought to be elicited from the witness Carter.—*Johnson v. State,* 94 Ala. 35.

The objection to the testimony of the father of the deceased as to dying declarations that the *corpus delicti* had not been proved, was without merit. Evidence had been received going to show the death of Webb from a gun shot wound inflicted by defendant.

The evidence as to the residence, and indefinite absence from the State, of O. H. Franklin, was sufficient as a predicate for proof of his testimony on the preliminary trial.—*Jacobi v. State,* 133 Ala. 1.

The court committed no error in giving the charge requested by the State.—*Compton v. State,* 110 Ala. 24, 37.

Charge 2 refused to defendant pretermits inquiry as to defendant's fault in bringing on the difficulty. It is also bad in assuming that *any* "action" on the part of the deceased provocative in point of fact of passion on the part of the defendant would be sufficient provocation in point of law.

Charge 4 requested by defendant was bad for that it was necessary to justify defendant on the theory of self-defense not only that he should have honestly believed he was in imminent peril, as the charge hypothesizes, but also that the circumstances were such as to *reasonably impress* him with that belief, which the charge does not hypothesize. Moreover, this charge was abstract in one or more of its postulates.

It will suffice to say in support of the court's refusal to give charge 7 that said charge was argumentative.

Charge 9 is elliptical and confused in its terms.

The tendency of charge 11 was to confuse the jury and to instruct them to acquit the defendant or to a mistrial

upon a reasonable doubt that he was guilty of the offense in terms charged in the indictment, when no such doubt may have existed in the mind of any juror in respect to his guilt of lower grades of homicide covered by the indictment, but not in terms charged therein.

Charge 12 has the same infirmity, and is also bad for its tendency to require the jury to base conviction alone on the evidence adduced by the State, when some incriminating evidence was introduced by the defendant. *Sanders v. State,* 134 Ala. 74.

Charge 18 was properly refused.—*Miller v. State,* 107 Ala. 40.

Charge 19, like charge 2, fails to negative defendant's fault in bringing on the difficulty.

We find no error in the record and the judgment must be affirmed.