# Wright v. The State.

### Murder.

(Decided June 30, 1916.   72 South. 564.)

1. **Jury; Special Venire; Number.**—Where there were 48 regular jurors which, with seven additional ones, were ordered to constitute the special venire, but one juror was not served, and nine failed to answer, and six were excused, the venire was not sufficient under § 32, Acts 1909, p. 319, since the venire in capital cases must consist of not less than 50 jurors.

2. **Criminal Law; Evidence.**—Whether a witness assisted the solicitor to strike juries in all cases in which he made arrests, was immaterial and irrelevant, his custom or interest in other cases being entirely immaterial.

3. **Same; Motive; Declaration.**—As such evidence tended to shed light on the motive and intent of defendant, it was not error to permit the question to a witness as to whether defendant had told him that deceased stole a suit of clothes and a pistol from him.

4. **Homicide; Evidence; Motive.**—The testimony of a deputy sheriff that he held warrants sworn out by defendant against deceased, was admissible upon the question of motive and intent.

5. **Evidence; Contents of Written Instruments.**—A statement that a warrant a witness had against deceased, charged him with a certain offense, was not proof of contents of the written instrument, but merely evidence of a collateral fact.

6. **Same; Conclusions.**—Questions as to whether a witness noticed any indications of a struggle, and whether the place indicated that deceased had moved around, being descriptive matter, were not objectionable as calling for a conclusion.

7. **Homicide; Evidence.**—The exclusion of evidence that certain witnesses were friendly with certain persons, who in turn were supposed to be friendly to deceased, was not error, as it was evidence of a collateral matter too remote to be material.

8. **Witnesses; Impeachment; Bias.**—While it is always competent to show bias, favor or hostility of a witness to one of the parties, the discretion of the trial court as to cross examination on collateral matters tending to show the credibility of the witness, will not be reviewed unless abused.

9. **Evidence; Irrelevancy.**—Whether a witness heard a party other than deceased or defendant make any statement as to where he was going, was irrelevant to any issue.

[Wright v. The State.]

**10. Trial; Remark of Prosecutor.**—A statement by the prosecutor that the jury might rest assured that if they convicted defendant, and it was shown to the court that the verdict was not sustained by the law and the evidence, it would be the duty of the court to set it aside, and the court would do so, cannot be said to be improper or prejudicial.

**11. Homicide; Instruction; Degree.**—Where there was nothing in the evidence to support the theory of manslaughter in the 2nd degree, the court will not be put in error for a failure to charge on that degree of manslaughter, as the charge would be abstract.

**12. Same.**—Charges that if there was reasonable ground to believe from the evidence that another than defendant could have killed deceased, then defendant should not be found guilty, was too broad, and pretermitted consideration of defendant's connection with the crime, and was abstract, speculative and argumentative.

APPEAL from Bessemer City Court.

Heard before Hon. J. C. B. GWIN.

Will Wright was convicted of murder in the second degree, and he appeals. Reversed and remanded.

The assignments of error mentioned and not sufficiently stated in the opinion are as follows:

(16) Overruling defendant's objection to the following question propounded to Powell, by the state: "Do you know anything about Will having trouble about stolen clothes?"

(17) Answer of witness, "I heard Will say he had a pistol and some clothes stolen from him (the deceased was Robert Foster)."

(8) Sustaining objection of state to question to witness Clayton: "Foster was a relative of them (the Jones boys), was he not?"

(9) Sustaining the state's objection to the following question to the same witness: "You were running with the Jones boys, were you not?"

(10) The court committed error in sustaining the solicitor's renewed objection to the same line of testimony, after statement by defendant's counsel that he expected to prove by such testimony that Frank and Leo Jones were related to the deceased, Foster, and that they were close friends of the witness, and that witness and said Jones boys were constantly together.

(19) Sustaining state's objection to the following question propounded to defendant. "Do you know whether or not Bob Foster was related to the Jones boys?"

(20) Sustaining state's objection to the following question propounded to the defendant: "I will ask you if the witness Clayton does not run with the Jones boys continuously?"

[Wright v. The State.]

(21) Sustaining objection to defendant's question to the witness Zollicoffer, as follows: "You stayed with the Jones boys last night, did you not?"

The defendant objected to, and moved to exclude, the following remarks of the solicitor, in his address to the jury:

"Gentlemen of the jury, you can rest assured that, if you convict this defendant under the law and the evidence in this case, and the court is shown that your verdict is not sustained by the law and the evidence, it will become his duty to set the verdict aside, and he would do so."

Assignment 18:

Sustaining the state's objection to the question propounded by defendant to the witness George Powell: "Did you hear Zollicoffer make any statement that night when you passed there as to where he was going?"

GOODWYN & ROSS, for appellant. W. L. MARTIN, Attorney General, and BEN G. PERRY, for the State.

EVANS, J.—Appellant was indicted for murder, convicted of murder in the second degree, and sentenced to a term of ten years' imprisonment. From the judgment of conviction he prosecuted this appeal.

(1) The record discloses that in addition to 48 jurors drawn and summoned to act as the regular jurors for the week beginning June 7, 1915, the trial court, on May 29, 1915, drew 7 additional names, which, together with the 48 names, it was ordered should constitute a special venire to try appellant's case. On June 7, 1915, appellant was arraigned, and the court set his case down for trial on the succeeding day. On June 7th the court, after hearing excuses, claims of exemption, and disqualification, excused 6 jurors, which, together with 9 jurors not answering and 1 not served, left a venire of 39. On the day of trial (June 8th), before entering upon the trial, appellant made a motion to quash the venire, and also filed a written objection, protesting against being put upon his trial, in view of the fact that the previously excused jurors had not been resummoned, and he was deprived of the venire prescribed by statute—a minimum venire of 50.—Acts 1909, p. 319, § 32. This court, in *Fowler's Case*, 8 Ala. App. 168, 63 South. 40, and *Lewis' Case*, 10 Ala. App. 31, 64 South. 537, held adversely to appellant's contention; but the

Supreme Court, in *Carmack's Appeal*, 191 Ala. 1, 67 South. 989, held that where 26 jurors, who were on the regular panels for the week and also on the special venire to try a capital case, were excused upon the organization of the regular juries for the week, and not resummoned for the capital venire, thus putting the accused upon a venire of less than 50, such action was reversible error.—See, also, *Waldrop v. State*, 185 Ala. 20, 64 South. 80.

(2) Numerous exceptions were reserved to the evidence. There was no error in overruling appellant's question propounded to M. F. Parker, to-wit, "Do you help him [solicitor] strike juries in all cases that you arrest?" Witness' custom, or what he did or what interest he manifested in other cases, was wholly and plainly irrelevant and immaterial.

(3) The court was not in error in allowing the solicitor to ask witness J. N. Smitherson: "I will ask you if Will Wright [appellant] made a statement to you that day at his house that Robert Foster [deceased] had stolen a suit of clothes and a pearl-handle pistol from him."

This tended to shed light on the question of motive and intent.

(4, 5) As to assignments of error 16 and 17, relating to testimony of Will Powell, the bill of exceptions discloses no objections, exceptions, or rulings of court; however, the testimony was entirely proper as tending to prove motive and intent. For the same reason, it was competent for deputy sheriff Moon to testify that he had a warrant, or warrants, for deceased sworn out by appellant. Nor was it error to permit witness Moon to say what the warrant he had for the deceased accused him of. This merely called for evidence of a collateral fact—not proof of the contents of a written instrument.—*Mobile, J. & K. C. R. R. Co. v. Hawkins,* 163 Ala. 565, 51 South. 37; *Griffin v. State,* 129 Ala. 92, 29 South. 783; *Pentecost v. State,* 107 Ala. 81, 18 South. 146; *Street v. Nelson,* 67 Ala. 504.

(6) The questions asked witness Smithson, "Did you notice any indication of a struggle?" and, "Did the place indicate that he had moved around any," are not objectionable as opinions. "Under a recognized modification of the general rule against admitting in evidence the opinions of ordinary witnesses, their conclusions as to the appearance of persons, animals, or things may be proved as being in their nature not mere opinions, but

[Wright v. The State.]

descriptive of facts."—*Southern Ry. Co. v. Proctor*, 3 Ala. App. 418, 57 South. 515. So witnesses have been allowed to testify that the report of a firearm sounded like a rifle (*Fowler's Case*, 8 Ala. App. 171, 63 South. 40) ; a depression in the sand "looked like where a man's shoulder had struck the ground" (*Watkins' Case*, 89 Ala. 87, 8 South. 134) ; that tracks looked like those of a person walking (*Smith's Case*, 137 Ala. 22, 34 South. 396) ; and that at a certain place witness saw signs of a "scuffle" (*Roberts' Case*, 122 Ala. 47, 25 South. 238). The court was not in error in permitting witness Smithson to answer the questions above indicated.

(7, 8) Appellant's counsel excepted to the court's disallowing several questions embraced in assignments 8, 9, 10, 19, 20, and 21, which sought to inquire into the friendly relations of witnesses with "the Jones boys," who were related to the deceased. Appellant contends that such evidence tended to show the bias of witnesses, and affected their credibility. We do not agree with this view. The fact that witnesses were supposed to be friendly with "the Jones boys," who in turn were friendly with and related to the deceased, is a collateral matter too remote upon which to predicate error.—*Bullington v. State*, 13 Ala. App. 61, 69 South. 319; *McAlpine v. State*, 117 Ala. 93, 23 South. 130. It is competent to show the bias, favor, or hostility of a witness to one of the parties himself; but the latitude of cross-examination on collateral matters, tending to shake the credibility of a witness, is a matter addressed to the sound discretion of the court, and without a plain abuse of discretion, the action of the trial court as to such matter will not be revised.—*Cox v. State*, 162 Ala. 66, 50 South. 398.

(9, 10) We are unable to see the relevancy of the question embraced in the eighteenth assignment; its refusal was proper. The remark of the solicitor (assignment 23) was not improper or prejudicial, and there was no error in overruling the motion to exclude it.

(11) The court will not be put in error for not having charged on second degree manslaughter. Such a charge would have been abstract, as there was nothing in the evidence to support such a theory.—*Thomas v. State*, 150 Ala. 31, 43 South. 371; *Ragsdale v. State*, 134 Ala. 24, 32 South. 674; *Dennis v. State*, 112 Ala. 64, 20 South. 925.

[Hutchinson v. The State.]

(12) The overruling of the motion for a new trial was free from error. It appears from the record the learned trial court gave 33 written charges requested by appellant and refused 2. One of the refused charges requested was the general affirmative charge. Its refusal was proper. The other refused charge was as follows: "The court charges the jury that if there is reasonable ground to believe from the evidence that another person than the defendant could have killed Robert Foster, then you could find the defendant not guilty."

The charge was properly refused. It is too broad, and pretermits all consideration of appellant's connection with the crime, for non constat another person might be the perpetrator, and yet appellant not be innocent. It required explanation as written. It may be said to be abstract and speculative; all the more so from the use of the word "could." It may also be subject to the criticism of being argumentative. A somewhat similar charge was condemned in *Pitman v. State*, 148 Ala. 612, 42 South. 993.

In view of the fact that the case must be reserved for the error first above pointed out, we have carefully reviewed all questions raised by the record proper and the bill of exceptions.

Reversed and remanded.