(84 South. 879)

## VAUGHN v. STATE. (6 Div. 655.)

(Court of Appeals of Alabama. April 6, 1920.)

1. JURY ⬤82(2)—VENIRE LEGAL THOUGH JURORS DRAWN WERE CONFINED TO THOSE LIVING WITHIN FIVE MILES OF COUNTY SEAT.

A venire was not illegal because additional jurors were drawn and were confined to those living within five miles of the county seat, in view of Acts 1909, p. 317, § 29, providing that provisions of acts as to selection, summoning etc., shall not be mandatory, and that no objection can be taken to any venire of jurors except for fraud.

2. CRIMINAL LAW ⬤1166½(5)—IRREGULARITY IN DRAWING JURORS NOT PREJUDICIAL.

Defendant could not complain that additional jurors drawn were confined to those living within five miles of the county seat, where he suffered no injury by reason thereof.

3. WITNESSES ⬤274(2) — PROOF BY STATE THAT WITNESS DRANK WHISKY, ETC., INADMISSIBLE ON CROSS-EXAMINATION OF WITNESSES TESTIFYING AS TO REPUTATION FOR VERACITY.

Where state offered testimony tending to impeach defendant's witness, and in rebuttal defendant offered testimony as to the good character of the witness for truth and veracity, the court erred in permitting the state on cross-examination of the character witnesses to prove that the witnesses had heard that the witness had drank whisky, been drunk, and played cards.

4. CRIMINAL LAW ⬤1180—DECISION OF SUPREME COURT BINDING ON APPELLATE COURT ON SUBSEQUENT APPEAL.

Determination by the Supreme Court that certain testimony was admissible in a criminal case was binding on the appellate court on a subsequent appeal.

5. CRIMINAL LAW ⬤410—WITNESSES ⬤347—FACT THAT DEFENDANT'S FATHER DID NOT MAKE STATEMENT INADMISSIBLE TO SHOW SON'S GUILT OR IMPEACH FATHER.

In a homicide case it was not proper to allow a witness to testify that the father of defendant had never stated to witness that "he hated it" (meaning the killing), the fact that the father, who testified, had not made such statement not shedding any light on the guilt or innocence of defendant or tending to impeach the testimony of the father, no occasion having arisen where it was incumbent on the witness to say anything in order to avoid an admission.

6. CRIMINAL LAW ⬤1169(1) — WITNESSES ⬤370(6)—TESTIMONY AS TO RELATIONS WITH DECEDENT IMMATERIAL, BUT NOT PREJUDICIAL.

Whether deceased in a homicide case was mad with a state's witness at another time and place than that of the killing was irrelevant, but not prejudicial.

7. WITNESSES ⬤242 — QUESTIONS ASKED WITNESS FOR STATE PERMISSIBLE TO REFRESH RECOLLECTION.

Questions asked a witness for the state with reference to his signing a certain paper prepared by counsel representing the state, as to whether he remembered such counsel's coming into the field where he was plowing and telling witness to make only a statement of the truth, and whether the witness had told him that the statement was true, held permissible for the purpose of refreshing the recollection of the witness.

8. CRIMINAL LAW ⬤393(1)—SEARCHES AND SEIZURES ⬤7 — DEFENDANT PROPERLY COMPELLED TO PERMIT COUNSEL FOR STATE TO USE TYPEWRITTEN TRANSLATION OF EVIDENCE TAKEN ON FORMER TRIAL FOR DEFENDANT; "PRIVATE DOCUMENT."

Court did not err in compelling accused's counsel in open court and in the presence of the jury to deliver to the state's counsel a typewritten translation of the evidence and testimony taken in shorthand on a former trial of the case, made for the accused by the court reporter, and paid for by the defendant, the transcript to be treated as certified by the official stenographer, the transcript containing the testimony of a state's witness then dead, and the stenographer's notes not being available as evidence, in view of Acts 1909, p. 266, § 7, such ruling not being in conflict with Const. 1901, § 5, providing against unreasonable seizures and searches, nor infringing upon the rule which prohibits courts from enforcing a defendant to give evidence against himself, and the transcript not being a "private document" within the meaning of the law that will not compel defendant to deliver documents that will incriminate him.

9. CRIMINAL LAW ⬤338(6) — DEFENDANT CANNOT INQUIRE INTO DETAILS OF TRANSACTION BETWEEN WITNESSES FOR STATE AND DEFENDANT.

In a criminal case court did not err in refusing to permit defendant's counsel to inquire into the details of former transactions and of former relations between the witnesses for the state and witnesses for defendant.

10. HOMICIDE ⬤112(2) — ACCUSED CANNOT INVOKE SELF-DEFENSE UNLESS FREE FROM FAULT.

In order for a defendant to be allowed to invoke the doctrine of self-defense, he must be free from fault in provoking the difficulty, and if by obscene words or deeds he voluntarily contributed to the bringing on of the difficulty, he cannot invoke the doctrine.

11. HOMICIDE ⬤300(13)—CHARGE ON SELF-DEFENSE IGNORING DOCTRINE OF FREEDOM FROM FAULT PROPERLY REFUSED.

Instruction as to self-defense was properly refused where it ignored the doctrine of freedom from fault.

12. CRIMINAL LAW ⬤829(5) — REQUESTED CHARGE ON SELF-DEFENSE PROPERLY REFUSED IF COVERED BY ORAL CHARGE.

Where the court in its oral charge fully covered the right of the defendant to protect him-

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

self from an attack, it was not error to refuse a requested charge on such matter.

**13. HOMICIDE ⚖118(1)—WHEN DUTY TO RETREAT ARISES.**

The duty to retreat arises when it appears necessary to do so in order to prevent the taking of human life, and it can be done without apparent increase of peril to the life or limb of the party assailed.

**14. CRIMINAL LAW ⚖807(1) — ARGUMENTATIVE INSTRUCTION PROPERLY REFUSED.**

A requested instruction which was an argument was properly refused.

**15. CRIMINAL LAW ⚖761(6) — CHARGE ON SELF-DEFENSE ASSUMING THAT DEFENDANT WAS A REASONABLE MAN PROPERLY REFUSED.**

A requested charge as to self-defense and defense of father was defective where it assumed that defendant was a reasonable man.

**16. CRIMINAL LAW ⚖829(18)—CUMULATIVE INSTRUCTIONS NOT NECESSARY ON REASONABLE DOUBT.**

Charges as to reasonable doubt are for the sole purpose of giving to the jury a clear definition of a reasonable doubt, and, when this has been done by the oral charge of the court and in written charges, the court will not be reversed for refusing to give charges that are merely cumulative.

Appeal from Circuit Court, Blount County; W. J. Martin, Judge.

Al Henry Vaughn was convicted of murder in the second degree, and he appeals. Reversed and remanded.

For former report of this see Vaughan v. State, 201 Ala. 472, 78 South. 378, where a statement of many of the facts are found to be set out. Matter relative to the motion to quash the venire sufficiently appear from the opinion, as do many of the exceptions to evidence. The questions to the witness Lon Wallace were as follows:

"By the State's Counsel: You remember my coming to the field where you were plowing some ten days after the shooting, don't you?"

"You remember me having this paper, don't you, and reading it over to you?"

"Do you remember me telling you that we did not want you to make any statement of anything but the truth do you?"

"Then you told me the statement was true."

Objections were interposed to each of these questions, were overruled, each question answered in the affirmative, and motion made to exclude the answers.

The following charges refused to the defendant are directed to be set out:

(12) Insulting or obscene language used by the defendant, if you find such were so used, will not deprive him of his right of self-defense. Therefore, if you find from the evidence that Ake Vaughn, the father of Al Henry Vaughn, made use of any insulting or obscene language against the deceased, Dick Stevens, the fact of his having used such obscene or insulting language did not deprive Ake Vaughn of his right of self defense against an attack or threatened assault by the deceased, Dick Stevens. And if the deceased at the time of the homicide was making, or about to make, an attack on Ake Vaughn, or it reasonably appeared to the son of Ake Vaughn, Al Henry Vaughn, the defendant in this case, that such an attack was being made or about to be made, viewing the case from the defendant's standpoint the defendant Al Henry Vaughn had the right to defend the person of his father from such attacks or threatened attack, and his right to do so would not be abridged by such previous use of insulting or obscene language, if such language was not used for or was not reasonably calculated to provoke, encourage, or bring on a difficulty.

(2) The law gives a person the right to use such force as may be reasonably necessary, under the circumstances by which he is surrounded, to protect himself from great bodily harm, as it does to prevent his life being taken, and this right is imputed by law to the son of a person so jeopardized. The son may justifiably use this necessary force to save his father from any felonious assault.

(6) If Ake Vaughn had no reasonable cause or ground to believe that Stevens was about to assault him in such a way or manner as to endanger his life or put him in peril of serious bodily harm until he was knocked down, he was under no duty to retreat.

(34) If at the moment the fatal shot was fired the circumstances were such that they impressed the defendant with the reasonable and honest belief that his father was in danger of losing his life or of suffering serious bodily harm, and if at that moment there did not reasonably appear to defendant a means of escape without increasing his danger, then you must find the defendant not guilty unless the state has proven beyond all reasonable doubt that either Ake Vaughn or the defendant was at fault in bringing on the difficulty.

John A. Lusk & Son and O. D. Street, all of Guntersville, and J. F. Kelton & Son, of Oneonta, for appellant.

The venire should have been quashed. Acts 1909, pp. 312–318. The court erred in permitting the evidence of specific acts as an impeachment of the character of the witness for truth and veracity. 46 Fla. 20, 35 South. 667; 15 Ala. App. 665, 74 South. 756, and cases there cited; 1 Greenleaf, § 580; 28 Ala. 61. The fact that the witnesses had been drinking with the defendant, and had played cards with him prior to the difficulty, was not admissible. 161 Ala. 114, 49 South. 461; 111 Ala. 92, 21 South. 330. It was error to require defendant's counsel to produce his certified transcript of the evidence on former trial. Section 5, Const. 1901; 15 Okl. Cr. 146, 175 Pac. 555; 174 Ala. 531, 56 South. 956; 107 Ala. 151, 18 South. 234; 116 U. S. 616, 6 Sup. Ct. 524,

29 L. Ed. 746; 86 Ala. 610, 6 South. 110, 4 L. R. A. 766, 11 Am. St. Rep. 84; 131 Ala. 16. Charges asserting that abusive or insulting language, if not used for the purpose of provoking a fight, do not deprive defendant of the right of self-defense. 79 Ala. 283; 123 Ala. 69, 26 South. 515; 129 Ala. 23, 30 South. 348; 8 Ala. App. 7, 62 South. 392. The charges defining as to what course may be used, and when, should have been given. 78 South. 378.

J. Q. Smith, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

No brief reached the Reporter.

SAMFORD, J. On the trial of the cause the defendant moved the court to quash the venire from which a jury was to be selected to try his case on the ground that the court had no authority to draw additional jurors, in addition to juries numbered 1 and 2, and three jurors on jury numbered 3, which the court did. confining the jurors so drawn to those living within five miles of the county seat. On the hearing of the motion, the following facts were agreed to:

"It was admitted that on Monday, immediately after the calling of the case and after the state had announced ready for trial, and defendant had been given time to prepare a showing for absent witnesses, the court having organized the petit jury, and there being 25 jurors present, the court directed the sheriff to bring into the courtroom the jury box and drew from the jury box the names of more than 18 jurors among others, and selected from such names 18 jurors who resided within five miles of the courthouse, and directed that they be summoned for attendance upon the court, and that on Tuesday before this case was called for trial the court had examined said jurors as to their qualification as jurors generally without reference to this case in particular, and had them sworn for the week, and these jurors were in attendance on the court at the time this case was called. No inquiry had been previously made as to the qualification of any jurors as to this particular case. The court here stated that it was the object and purpose of the court in drawing the special jurors on yesterday evening to obtain three full panels so that the time of the court might not be delayed in the trial of causes upon the docket for the then present week; that, if objection is made by the defendant, the names of these gentlemen drawn on yesterday evening will not be placed upon the panels or placed upon them as jurors.

"Thereupon counsel for the defendant stated that they reserved an exception to the ruling of the court requiring them to make an election or rejection or accepting jurors thus summoned.

"Thereupon the court overruled the defendant's motion to quash the venire, and to this ruling of the court the. defendant then and there duly excepted, and the defendant was furnished with a list containing the jurors who were thus drawn by the court from this list. The defendant and the state alternately struck as pro-

17 ALA.APP.—25

vided by law until the jury was selected and duly impaneled, and thereupon the trial proceeded."

[1, 2] There are at least two reasons why the appellant's contentions are not tenable:

(1) Section 29 of the act of the Legislature (Acts 1909, p. 317) provides:

"Sec. 29. It is hereby expressly declared to be the intent of the Legislature in the enactment of this law, to make the provisions hereof in the relation to the selection, drawing, summoning or empaneling of jurors directory merely and not mandatory. The jurors selected, drawn, summoned and impaneled under the provisions of this act, whether at or earlier, or later day than required by this act, must and shall in all respects be deemed legal, and to possess in full, in every respect, power to perform all of the duties belonging to grand and petit jurors. And no objection can be taken to any venire of jurors except for fraud in drawing or summoning the jurors."

(2) It does not appear that the defendant suffered any injury by reason of the action of the court.

[3] The defendant introduced as a witness in his behalf Ake Vaughn, the father of the defendant, the state offered testimony tending to impeach this witness, and in rebuttal defendant offered testimony as to the good character of the witness for truth and veracity. On cross-examination of these character witnesses, the state, over the objection of the defendant, was allowed to prove that they had heard that on various occasions the witness had drank whisky, been drunk, or had played cards. On a former appeal of this case our Supreme Court said:

"The defendant introduced a number of witnesses who testified to the good character of defendant and his father; the latter having also testified in the cause. Upon cross-examination of these witnesses the state was permitted to ask if they had not heard of the defendant and his father being drunk and gambling with cards. We are of the opinion that in this there was no reversible error." Vaughan v. State, 201 Ala. 472, 475, 78 South. 378, 381.

This ruling was based upon a line of authorities there cited, holding, in effect, that where a witness has testified in chief to the good character of the defendant, he may be asked on cross-examination whether or not he has heard of certain offenses specifying them, charged against the defendant before the then pending prosecution, inconsistent with the character he is called to prove. It will be noted that in the former appeal the inquiry was as to the general character of the witness and defendant, while in the present appeal the inquiry is limited to general character for truth and veracity. The rule as laid down by Underhill on Criminal Evidence (2d Ed.) § 82, is as follows:

"A witness to good character may be asked on cross-examination to test his credibility

whether he heard rumors of particular and specific charges of the commission of acts inconsistent with the character he is called to prove."

This rule was approved in White v. State, 111 Ala. 92, 21 South. 330 and in dealing with the question it is said in 1 Greenl. on Ev. (16th Ed.) p. 580, subd. (c):

"There may be, first, a limitation as to relevancy. Not all misconduct indicates a bad character, and not all evil deeds indicate a lack of the truth telling disposition. On principle, only such misconduct as exposes a lack of veraciousness or honesty should be inquired after."

This principle has been recognized by our Supreme Court in Crawford v. State, 112 Ala. 1, 21 South. 214; Motes v. Bates, 80 Ala. 387; Rhea v. State, 100 Ala. 119, 14 South. 853; Evans v. State, 109 Ala. 11, 19 South. 535; Ex parte Lewis, 13 Ala. App. 31, 68 South. 792; Huckabaa v. State, 4 Ala. App. 68, 58 South. 684; Coates v. State, 5 Ala. App. 182, 59 South. 323; Swope v. State, 12 Ala. App. 297, 68 South. 562; Terry v. State, 15 Ala. App. 665, 74 South. 756. While the holding on the former appeal may have the effect of extending the rule as to general character, so that general character may be affected by drinking whisky or playing cards, that holding does not control the present appeal, applying, as the question here does, to character for veracity, and this court is not prepared to hold that drinking and playing cards renders a witness less apt to testify truthfully. The court erred in its several rulings on the evidence in conflict with the rule as herein stated.

There is another point of difference between the question as here presented and as presented on former appeal. Here it is only Ake Vaughn, a witness, and there it was both a witness and the defendant.

[4] As to those questions asked some of defendant's witnesses on cross-examination if they and the Vaughns (defendant and father) did not drink together, the Supreme Court has passed upon. Under the statute, we have no power to change the ruling there made, and we ought not to, and do not, therefore, express our opinion, but attention is called to the opinion in the case of Moulton v. State, 88 Ala. 116, 6 South. 758, 6 L. R. A. 301.

[5] It was not proper to allow the witness Tince Lecroy to testify that Ake Vaughn, the father of defendant, had never stated to witness that "he hated it" (meaning the killing). So far as is shown by the evidence, there had no occasion arisen where it was incumbent on the witness to say anything in order to avoid an admission. And certainly the fact that Ake Vaughn had not told this witness that "he hated it" could not shed any light on the guilt or innocence of the defendant or tend to impeach the testimony of Ake Vaughn.

[6] Whether Stephens, the deceased, was mad with Lon Wallace, a state's witness, at another time and place than that of the killing, while irrelevant, was not prejudicial.

[7] The questions asked the witness Lon Wallace with reference to his signing a certain paper prepared by counsel representing the state were permissible for the purpose of refreshing the recollection of the witness.

The testimony as to the drinking of whisky and playing cards by the defendant and certain of the witnesses has already been passed upon by the Supreme Court on former appeal. Vaughan v. State, supra.

[8] The court, over defendant's objection and exception first requested and then compelled the defendant's counsel in open court and in the presence of the jury to deliver to the state's counsel a typewritten translation of the evidence and testimony taken in shorthand on a former trial of this case made for the defendant by the court reporter and paid for by the defendant, the transcript to be treated as certified by the official stenographer, the transcript containing the testimony of a state's witness then dead, and the stenographer's notes not being available as evidence. Section 7 of the act of the Legislature of 1909 (Acts 1909, p. 263) provides that:

"All transcripts furnished by said official stenographer shall be certified to by him over his signature, and when so certified, such transcript shall be prima facie evidence of the proceedings in said cause."

It is clear, therefore, that being prima facie evidence of the proceedings on a former trial, and being then in court, the court had the power, yea, it was his duty, to admit and require any part of the transcript relevant to the issues then being tried to be produced and introduced as evidence. This ruling is not in conflict with section 5 of the Constitution of 1901, providing against unreasonable seizures and searches, but is a reasonable rule in aid of the due administration of justice. Neither does it infringe upon the rule which prohibits the courts from forcing a defendant to give evidence against himself. Defendant's counsel might have been called to testify as to what was testified to on a former trial. Nor is the transcript a private document within the meaning of the law that will not compel a defendant to deliver documents that will incriminate him, and the case of Cooper v. State, 86 Ala. 610, 6 South. 110, 4 L. R. A. 766, 11 Am. St. Rep. 84, and other cases of like tenor, are not in point. For the foregoing purposes, and to that extent, the court had the power and control over the transcript. Wigmore, Ev. § 1669. It could not be called for on other terms. 1 Thomp. Trials, § 829; Lawrence v. Van Horne, 1 Caines (N. Y.) 285. The ruling of the court on this question was as follows:

"Gentlemen, the way the court feels about this matter, and probably the way the jury feels

about the matter, is that they want to know the true facts in this case. The testimony was taken by a sworn officer of the court in shorthand. The notes are not present and not accessible at this time to the court. There is a certified copy of the record which had been used in the trial in court. One of the witnesses who was examined at a former time is now dead. The state seeks to introduce the testimony of this witness which is contained in this record. The court is of the opinion, and will so rule, that the defendant be required to allow the state the use of that record for the purpose of introducing that testimony, provided, of course, that it is relevant to the issue in this case."

[9] This ruling was in line with the foregoing and was without error. The court did not err in refusing to permit defendant's counsel to inquire into the details of former transactions and former relations between witness for the state and witnesses for defendant.

There are many rulings of the court as to the admission of testimony, many of which are clearly without error, and all of them are of so elementary a nature that we deem it unnecessary to extend this opinion by a seriatim discussion of them.

[10] Refused charge numbered 12, which will be set out by the reporter, is illustrative of charges 1, 3, 4, 5, 27, 28, 30, 35, 44, 62, and 63. In order for a defendant to be allowed to invoke the doctrine of self-defense, he must be free from fault in provoking the difficulty, and if by word or deed he voluntarily contributed to the bringing on of the difficulty, he cannot invoke the doctrine. Mitchell v. State, 129 Ala. 23 (Fourteenth headnote), 30 South. 348. The charge was properly refused.

[11, 12] Refused charge 2, which will be set out by the reporter, is illustrative of charges 8, 10, 22, 23, 29, 31, 32, and 33. This charge ignores the doctrine of "freedom from fault," and, besides, the court in its oral charge fully covered the right of the defendant to protect himself from an attack. The charge was properly refused.

[13] Refused charge 6, which will also be set out by the reporter, is illustrative of charges 11, 51, and 53. The doctrine of retreat is well settled in this state. The duty to retreat arises when it appears necessary to do so in order to prevent the taking of human life, and it can be done without an apparent increase of peril to the life or limb of the party assailed. The charge asserts a contrary rule and was properly refused.

[14, 15] Charge 7 was an argument, and the principles set out in charge 34 were fully and fairly covered in the general charge of the court. Besides, charges similar to charge 34 have been held to be bad, as assuming that the defendant was a reasonable man.

[16] Charges 13, 40, 50, and 59, defining a reasonable doubt, while not covered in hæc verba by the given charges or by the oral charge of the court, were in effect covered thoroughly. Charges of this character are for the sole purpose of giving to the jury a clear definition of a reasonable doubt. When this has been done by the oral charge of the court, and in written charges, the court will not be reversed for refusing to give charges that are merely cumulative and which frequently tend to confuse rather than to make more clear.

The other charges refused to the defendant were upon the effect of the evidence or hypothesized upon evidence brought out in the trial, and will not probably arise or become material on another trial, and hence are not passed upon.

For the error pointed out, the judgment is reversed, and the cause is remanded.

Reversed and remanded.