(89 South. 391)

## STEWART v. STATE. (6 Div. 773.)

(Court of Appeals of Alabama. Feb. 15, 1921. Rehearing Denied April 5, 1921.)

**1. Jury ⬅≫82(3) — Defendant in capital case not entitled to complain of irregularities.**

Under Acts 1919, p. 1041, relative to special venires in capital cases, and Code 1907, §§ 7279, 7280, authorizing the court to excuse persons summoned as jurors for any reasonable or proper cause, where a case was set for trial on June 7th, but passed to June 9th, and the special venire was for 100 persons, and, eliminating those not served and those excused, there still remained more than 30 names, defendant could not complain because the court did not summon a regular venire as well as a special venire, or because it excused persons summoned on June 7th, it not appearing that the case was not then ready for trial, especially where it was not claimed that there was any fraud in drawing or summoning the jurors.

**2. Homicide ⬅≫174(2)—Condition of deceased when found may be proved.**

On a trial for murder, in which the defense was self-defense, it was competent for the state to show the condition of the deceased, when found as tending to show when and how he came to his death.

**3. Criminal law ⬅≫696(2)—Defendant should move to exclude objectionable answer to proper question.**

If the answer to a question about a matter which the state had a right to prove was objectionable, defendant should have moved to exclude it.

**4. Homicide ⬅≫228(2)—Corpus delicti may be proven by circumstances.**

On a trial for murder, the corpus delicti may be proven by circumstances from which the jury may reasonably infer that the offense had been committed.

**5. Homicide ⬅≫174(1) — Defendant's change of countenance on hearing deceased's name mentioned held admissible.**

On a trial for murder, evidence that when the name of deceased was mentioned in a con-

versation a day or two after the body was found defendant's countenance changed was admissible.

**6. Criminal law ⚖═422(1) — Declarations of one defendant held admissible.**

Where it was agreed between the state and two defendants charged with murder that they should be tried together, and that all rulings should apply to both cases, evidence that one of the defendants said that, if deceased was dead, his family would be better off, was admissible, especially where there was some evidence of a conspiracy between the two defendants.

**7. Witnesses ⚖═312 — Evidence bearing on question as to opportunity of witness to know whether deceased had gun held admissible.**

Where defendant claimed that the killing was in self-defense, and it appeared that deceased was at a blacksmith's shop shortly before the killing, anything that was done there in reference to unloading or fixing the wagon was competent as tending to show the opportunity of the blacksmith to see what was in the wagon to refute defendant's contention that deceased had a gun with him.

**8. Witnesses ⚖═379(1) — Contradictory statements by witness may be proved to impeach him.**

On a trial for murder, evidence that the son of the deceased, who was with him at the time of the killing, had at other times and on other occasions made statements different from his testimony, was admissible for impeaching purposes.

**9. Criminal law ⚖═364(3) — Questions asked defendant as to disposition of deceased's body admissible as res gestæ.**

On a trial for murder, where defendant claimed self-defense, questions asked him by the solicitor as to what disposition was made of deceased's body and his hat after he was killed were admissible as part of the res gestæ and as throwing light on whether the body was concealed, and thus bearing on the question whether deceased was killed in self-defense or waylaid.

**10. Homicide ⚖═190(6) — Threats not apparently directed at defendant not admissible.**

On the trial of one Kendrick for murder, a threat by deceased to kill "old man Kendrick" was not admissible where there was an older man than defendant in the community having that same name, especially where at the time the evidence was offered no evidence tending to show self-defense had been offered.

**11. Homicide ⚖═190(2,7) — Threats by deceased not admissible unless communicated and unless deceased was the aggressor.**

On a trial for murder threats by deceased are not admissible unless there is evidence to show that deceased was the aggressor, and that the threats were communicated.

**12. Homicide ⚖═165, 166(12) — Evidence concerning insurance on life of deceased held admissible.**

On a trial for murder, evidence that deceased had a paid-up life insurance policy on his life payable to his three children, and that some time before the killing one of the defendants made an inquiry of the insurance agent as to such facts, was admissible to refute the contention of such defendant that deceased was cruel to his children and mistreated them or as tending to show a motive for the killing.

**13. Homicide ⚖═174(2) — Evidence of disinterment of corpse, location of wound, etc., held admissible.**

On a trial for murder, evidence of the disinterment of the body of deceased shortly after the burial, the location of the wound, and the indicated range of the shots was admissible.

**14. Criminal law ⚖═700, 1171(1) — Improper, but not reversible, error for solicitor to touch juror's knee during argument.**

It was improper for the solicitor to touch the knee of one of the jurors during the argument, if intentional, but where he disavowed any such intention, and it did not appear that defendant suffered any on account of the incident, it was not ground for reversal.

On Rehearing.

**15. Criminal law ⚖═723(1) — Homicide ⚖═165—Evidence and argument concerning care of deceased's children in public institutions held error.**

On a trial for murder it was prejudicial error to admit evidence that deceased's widow had left the community, and that one of his children was in a reform school, and another in an industrial school being cared for by the state at the expense of taxpayers, and to permit the solicitor to predicate thereon an argument to jury.

**16. Criminal law ⚖═696(2)—Motion to exclude responsive answers to questions objected to not necessary.**

Where improper questions were objected to on stated grounds and exceptions reserved to the overruling of the objections, no motions to exclude responsive answers thereto were necessary.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

William E. Stewart was convicted of murder in the second degree, and he appeals. Reversed and remanded on rehearing.

Certiorari denied 206 Ala. 9, 89 South. 395.

Goodwyn & Ross, of Bessemer, for appellant.

The court erred in excusing the jurors without consent of defendant. Acts 1919, pp. 319, 1041. The condition of the body some time after the killing was improper testimony. 160 Ala. 82, 49 South. 329; 200 Ala. 562, 76 South. 920. No confessions or admissions are proper until after proof of the cor-

pus of the crime. 109 Ala. 50, 19 South. 494; 165 Ala. 99, 51 South. 311. The court erred in its rulings on objections to remarks of the prosecutor. 203 Ala. 486, 84 South. 266; 183 Ala. 273, 61 South. 80, Ann. Cas. 1916A, 543; 159 Ala. 51, 48 South. 662; 16 Ala. App. 36, 75 South. 181; 17 Ala. App. 500, 86 South. 158; 17 Ala. App. 548, 86 South. 111.

J. Q. Smith, Atty. Gen., Lamar Field, Asst. Atty. Gen., and Ben G. Perry, Sol., of Bessemer, for the State.

The condition of the body when exhumed and the location of the wounds were competent. 17 Ala. App. 469, 86 South. 132. The corpus was sufficiently proved for the admission of confessions. 64 South. 529; 10 Ala. App. 224, 65 South. 418; 135 Ala. 1, 33 South. 329. The trial was joint by agreement, and Kendrick's statements were admissible. 159 Ala. 53, 48 South. 689. The exceptions to the argument of the solicitor present nothing for review. 142 Ala. 49, 39 South. 14, 110 Am. St. Rep. 17; 194 Ala. 353, 70 South. 123; 151 Ala. 131, 44 South. 403; 52 Ala. 224; 5 Ala. App. 456, 57 South. 599; 3 Ala. App. 194, 58 South. 74.

MERRITT, J. [1] The appellant, under an indictment charging him with the murder of one Henry Popee, was convicted of murder in the second degree in the Bessemer division of the circuit court of Jefferson county, Ala., and sentenced to the penitentiary for a term of 10 years. The record of the organization of the juries recites that the judge drew from the jury box 100 names which should constitute the special venire for the trial of capital cases set for the week beginning June 7, 1920. On the 25th day of May, 1920, the defendant, being arraigned, pleaded not guilty. Monday, June 7, 1920, was set as a day for his trial, and the sheriff ordered to serve a copy of the indictment and a copy of the venire drawn for the week of June 7, 1920, on the defendant. The record further discloses that on June 7th, the solicitor and the defendant being present in court, the case was passed to June 9th, and on this latter date passed to June 10, 1920, at which time trial was begun, but before entering upon the trial the defendant filed a motion objecting to being placed on trial and moved the court to quash the venire, both the objection and motion being incorporated together. The objections and motion are asserted on the propositions that on June 7, 1920, the court excused a number of the special venire for one cause and another, and that under Acts of 1919, p. 1041, this could only have been done "if the case is ready for trial," and on the further ground that the court summoned no regular venire and completed the same by a special order for an additional number to constitute a special ven-

ire for the trial of the case as required by Acts 1919, p. 1041, but drew only a special venire. There is nothing to indicate that the case was not ready for trial on the day set therefor, viz. June 7th, and the fact that jurors were on this date excused, there being no question raised as to the rightfulness of the court in excusing them, can avail the defendant nothing. Code, §§ 7279 and 7280, irrespective of the act of 1919, gives the court the right to excuse from service any person summoned as a juror if he is disqualified or exempt or for any other reasonable or proper cause, to be determined by the court. The special venire was for 100 persons, and, eliminating those not served and those excused, there still remained 60 names from which to select the jury to try the defendant. The number not being reduced below 30, the defendant had no legal cause of complaint. Cormack v. State, 191 Ala. 1, 67 South. 989; Wright v. State, 15 Ala. App. 91, 72 South. 564; Vaughn v. State, 17 Ala. App. 383, 84 South. 879.

[2, 3] Besides, there was no contention that there was any fraud in the drawing or summoning of the jury. The evidence for the state tended to show that the deceased, Popee, was found dead a short distance from the highway, with a gunshot wound in the head, and that the defendant, Stewart, and one Kendrick entered into a conspiracy to kill the deceased.

The evidence for the defendant tended to show that the killing was in self-defense.

It was competent for the state to show the condition of the deceased when found, as tending to show when and how he came to his death, and if the answer was objectionable to the defendant he should have moved to exclude it, which was not done in this instance. The state sought to show by several witnesses that the defendant, together with Kendrick, who was also under indictment for this killing, had made confessions and objections were interposed on the ground that the corpus delicti had not been proven. Witnesses who examined the body of the deceased stated that it was about 100 yards from the road in some bushes, and that it had gunshot wounds in the back of the head.

[4] The corpus delicti may be proven by circumstances from which the jury might reasonably infer that the offense had been committed. Truetts Case, 10 Ala. App. 108, 64 South. 529; Pappemburg Case, 10 Ala. App. 224, 65 South. 418; Hunt Case, 135 Ala. 1, 33 South. 329.

[5] There was no error in permitting the witness Weed to testify that in a certain conversation with the defendant Stewart a day or two after the body of deceased was found, when deceased's name was mentioned, Stewart's countenance changed. Hainsworth v. State, 136 Ala. 13, 34 South. 203; Parrish v. State, 139 Ala. 44, 36 South. 1012; Thornton

v. State, 113 Ala. 43, 21 South. 356, 59 Am. St. Rep. 97.

[6] The bill of exceptions recites that it was agreed between the state and each defendant that both defendants be tried together, and that all rulings made by the court apply to both cases. It was therefore competent to show the confessions made by the defendant Kendrick to the witness Weed, when told that Henry Popee was found dead, that he stated "if he was dead, his family would be better off." Besides there was some evidence tending to show a conspiracy on the part of Kendrick and the defendant, Stewart, to commit the crime.

[7] The testimony tended to show that just prior to the time deceased is alleged to have been killed he, with his son, was in deceased's wagon at the blacksmith shop of one Russell. What, if anything, was done there in reference to unloading or fixing the wagon was competent as tending to show the opportunity of Russell to see what was in the wagon or on the seat thereof, to refute the contention of the defendants that deceased had a gun with him in the wagon and attempted to use it at the time he was killed.

[8] One of the ways enumerated for impeaching a witness is to show that he has made contradictory statements, and it was clearly within the bounds of this rule to show that the witness Johnnie Popee, son of deceased, and who was with deceased at the time of the killing, had at other times and on other occasions made statements different from his testimony as given at this time. In the face of the many and varied objections to this testimony, the witness stated himself that he had told at other times how the killing occurred, which was variant from that given on the occasion of this trial, but that at the other times he had not told the truth.

[9] The questions propounded by the solicitor to the defendant, Stewart, as to what disposition was made of the body of deceased and his hat after he was killed were all proper as part of the res gestæ and throwing light on whether the body was concealed, as tending to refute the claim that he had killed deceased in self-defense, or whether he had waylaid the deceased, killed him, and concealed the body, as was the state's contention. Montgomery Case, 17 Ala. App. 469, 86 South. 132.

[10, 11] There was no error in refusing to permit the witness George to testify as to threats made by the deceased to the Kendrick family. The evidence in this connection was a threat to kill old man Kendrick, and that there was a Kendrick in the community older than the defendant Kendrick. Besides, at this time no evidence had been offered tending to show self-defense. Unless there is evidence to show that the deceased was the aggressor and that threats were communicated, threats of deceased are not ad-missible. Wilson v. State, 140 Ala. 43, 37 South. 93.

[12] It cannot be held under the facts disclosed in this record to have been error to permit the state to show that deceased had a paid-up life insurance policy payable to his three children, and that some time before the killing the defendant Kendrick was making inquiry of the insurance agent as to these facts. It does not appear for what specific purpose these facts were elicited, but it may have been to refute the contention of the witness Kendricks that deceased was cruel to his children and mistreated them, or as tending to show a motive for the killing, but might not its effect be beneficial to the defendant in explanation of the statement attributed to the witness Kendrick that Popee's (deceased's) family would be better off if he was dead?

[13] The evidence of the disinterment of the body of the deceased, shortly after the burial, the location of the wound in the back of the head, and the indicated range of the shots was all properly admitted.

[14] The argument of the solicitor to which objection was made appears from the record to have been in answer to the argument made by counsel for the defendant, and, while neither appears to have been proper, counsel must be left in the attitude in which they placed themselves. For the solicitor to touch the knee of one of the jurors during the argument, if intentional, was an improper practice, but the record discloses his disavowal of any such intention, and it does not appear that the defendant suffered any on account of this incident.

If the state's evidence is to be believed, this was a most horrible and brutal murder, one deserving of the severest penalty of the law, and the defendant may well be pleased that his was only a sentence for 10 years.

If the defendant's evidence is to be believed, there were some tendencies of it that indicated self-defense, and, if he acted in his own defense on the occasion of the slaying of Henry Popee, he should not have been convicted. However, these were questions which were properly submitted to the jury for determination.

There is no error in the record, and the judgment of conviction is affirmed.

Affirmed.

## On Rehearing.

[15] In the opinion written to an affirmance of the judgment of conviction in this case, we stated in reference to the argument of the solicitor, to which objection was made and exception taken, that neither the argument of the solicitor nor that of counsel for the defendant appeared to be proper, and that counsel must be left in the attitude in which they placed themselves. Upon reconsideration of the entire record, we are satisfied that

in this we were wrong, and that our duty in the matter is to grant the motion for a rehearing.

On the trial of the case the solicitor was permitted, over the timely objections and exceptions of the defendant, to ask many questions as to the present whereabouts of the three small children of deceased, eliciting answers thereto that they were in state institutions and being cared for by the state, and with this testimony as a predicate the solicitor in argument stated to the jury, "The state of Alabama is now taking care of them" and they are "being cared for by the taxpayers."

The objections and exceptions to the remarks of the solicitor are hardly full or specific enough upon which to base exceptions, but they serve to illustrate the prejudicial nature of the testimony relative to the children of the deceased at the time of the trial. The testimony above referred to was all immaterial and irrelevant to any issue in the case. The fact that the widow of the deceased had left the community, that one of his children was in the reform school and another in the industrial school and being cared for by the state, and this expense was being borne by the taxpayers, could have no possible bearing on the guilt or innocence of the defendant, and might be made the basis for a highly prejudicial appeal before the jury. In fact, this record discloses a great amount of unnecessary passion in the trial of this case, and, as stated before, not entirely limited to counsel for the state.

Persons charged with crime are entitled to a fair and impartial trial before a jury composed of fair men, who will render a verdict free of all passion, upon legal evidence, as applied to the law. This result cannot always be had, where counsel, in their zeal for the cause they represent, are permitted to make impassioned appeals to the jury based upon illegal testimony, or where counsel during the examination of witnesses are allowed to propound questions eliciting responses that are immaterial and irrelevant.

[16] The questions above referred to were objected to, the grounds stated, objections overruled, and exceptions reserved. The answers to these questions were responsive, and therefore no motions to exclude the answers were necessary. Troy Lumber & Const. Co. v. Boswell, 186 Ala. 409, 65 South. 141. In so far as the opinions in Miller v. State, 16 Ala. App. 3, 74 South. 840, and Tiller v. State, 10 Ala. App. 45, 64 South. 653, are in conflict with the foregoing it is expressly overruled.

The application for rehearing is granted, judgment of affirmance is set aside, and the judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.